UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF WASHINGTON AT TACOMA

IN RE:

SARAH HOOVER,

    Debtors.

---

SARAH HOOVER,

    Plaintiffs,

v.

QUALITY LOAN SERVICE CORPORATION OF WASHINGTON, PHH MORTGAGE SERVICES D/B/A PHH MORTGAGE SERVICES, HSBC BANK USA, N.A, AS TRUSTEE OF THE FIELDSTONE MORTGAGE INVESTMENT TRUST, SERIES 2006-2, NEW REZ, LLC, AND IH6 PROPERTY WASHINGTON, L.P. D/B/A INVITATION HOMES,

    Defendants.

BK Case No. 19-42890-MJH

Chapter: 13

Adv. Pro.

COMPLAINT FOR WILLFUL VIOLATION OF THE AUTOMATIC STAY UNDER 11 USC § 362(k)(1).

Sarah Hoover, the Debtor and Plaintiff in this proceeding ("Hoover" or "Plaintiff"), files this Complaint for violation of the automatic stay under 11 U.S.C. § 362(k)(1) and states:

## I.    JURISDICTION AND VENUE

1. This Court has jurisdiction over this action under 28 U.S.C. § 1334. This Court also has jurisdiction pursuant to 28 U.S.C. § 157(b)(1) in that this action arises under the Chapter

COMPLAINT FOR WILLFUL VIOLATION OF THE
AUTOMATIC STAY UNDER 11 USC § 362(k)(1) - 1

HENRY & DEGRAAFF, P.S.
787 MAYNARD AVE S.
SEATTLE, WASHINGTON 98104
telephone (206) 330-0595
fax (206) 400-7609

Case 20-04002-MJH    Doc 1    Filed 01/25/20    Ent. 01/25/20 16:59:04    Pg. 1 of 15

13 bankruptcy case, *In re Sarah Hoover,* filed in this district and division at case no. 19-42890-MJH, and it is a core proceeding.

2.  Venue is proper in this Court pursuant to 28 U.S.C. § 1409.

## II. PARTIES

3.  Plaintiff Hoover is an individual and is the Chapter 13 Debtor in the underlying bankruptcy. Ms. Hoover resides in Pierce County, Washington.

4.  Defendant Quality Loan Service Corporation of Washington (hereinafter referred to as "QLS") is a corporation chartered under Washington law with principal offices at 108 1st Ave S, #202, Seattle, WA 98104-2538. QLS does business in Washington. Its registered agent in Washington is Sierra Herbert-West, 108 1st Ave S, #202, Seattle, WA 98104.

5.  Defendant PHH Mortgage Corporation d/b/a PHH Mortgage Services (hereinafter referred to as "PHH Mortgage" or simply "PHH") is a corporation that was incorporated under the laws of state of New Jersey with principal offices at 1 Mortgage Way, Mount Laurel, NJ 08054. It does business in the state of Washington as a foreign profit corporation. Its registered agent in the state of Washington is Corporation Service Company, 300 Deschutes Way SW, Ste 304, Tumwater, WA 98501.

6.  Defendant New Rez, LLC (hereinafter referred to as "New Rez") is a corporation that was incorporated under the laws of the state of Delaware.

7.  At all times relevant hereto and in all matters herein alleged, New Rez worked in concert with Defendant PHH. Thus, all actions taken by PHH as alleged in this matter were also taken by New Rez.

8.  Defendant HSBC Bank USA, N.A, as trustee of the Fieldstone Mortgage Investment Trust, Series 2006-2 (hereinafter referred to as "HSBC") is a national bank that is federally chartered bank that is a member of the federal deposit insurance corporation (FDIC) with its principal offices in the United States at 1800 Tysons Blvd, Tysons, Virginia 22102 with Michael M. Roberts as the Chief Executive Officer.

COMPLAINT FOR WILLFUL VIOLATION OF THE
AUTOMATIC STAY UNDER 11 USC § 362(k)(1) - 2

HENRY & DEGRAAFF, P.S.
787 MAYNARD AVE S.
SEATTLE, WASHINGTON 98104
telephone (206) 330-0595
fax (206) 400-7609

Case 20-04002-MJH    Doc 1    Filed 01/25/20    Ent. 01/25/20 16:59:04    Pg. 2 of 15

9. At all times relevant hereto and in all matters alleged herein, PHH / Ocwen and New Rez acted as agent for and on behalf of Defendant HSBC, its principal. All of the actions taken by PHH / Ocwen and New Rez as alleged in this matter where taken under the supervision and/or direction of HSBC.

10. HSBC is the successor in interest to Fieldstone Mortgage Company ("Fieldstone"), which originated the mortgage loan on the Residence on July 25, 2006 in the amount of $333,000.

11. Defendant IH6 Property Washington, L.P. d/b/a Invitation Homes ("IHG") is a limited partnership formed under the laws of the state of Delaware with principal offices at 1717 Main Street, Suite 2000, Dallas, Texas 75201. Its registered agent in the state of Washington is Corporation Service Company, 300 Deschutes Way SW, Ste 304, Tumwater, WA 98501.

12. Plaintiff is informed and believes and therefore alleges that at all times mentioned, each Defendant (with the exception of Defendant IH6) was the agent of the remaining Defendants, and in doing the things alleged, was acting within the course and scope of that agency.

### III.   FACTUAL BACKGROUND

13. Plaintiff Sarah Hoover and her husband suffered a downturn in their family business, which became evident by late 2018. In January 2019, Ms. Hoover began contacting the loan servicer for her home, PHH who also later identified itself as New Rez (under its then-identity as Ocwen Loan Servicing, LLC and/or Ocwen Financial Corporation) in an effort to save her family home, originally purchased by her (now-deceased) father. Without needlessly detailing the months of Ms. Hoover's efforts, in short, PHH was unwilling to work with Ms. Hoover to bring the loan current or to otherwise offer a loan modification.

14. Thus, facing a nonjudicial foreclosure sale on Friday, September 13, 2019,[1] Plaintiff Hoover filed her Chapter 13 voluntary petition for relief under Title 11 of the United

---

[1] Note RCW 61.24.030 (10) was recently amended in 2018 to allow the nonjudicial foreclosure procedure for the real property of a deceased borrowers' real property.

COMPLAINT FOR WILLFUL VIOLATION OF THE
AUTOMATIC STAY UNDER 11 USC § 362(k)(1) - 3

HENRY & DEGRAAFF, P.S.
787 MAYNARD AVE S.
SEATTLE, WASHINGTON 98104
telephone (206) 330-0595
fax (206) 400-7609

Case 20-04002-MJH    Doc 1    Filed 01/25/20    Ent. 01/25/20 16:59:04    Pg. 3 of 15

States Code (the "Bankruptcy Code") on Monday, September 9, 2019 seeking, among other things, the protection afforded a debtor pursuant to the automatic stay contained in 11 U.S.C. §362.

15. Ms. Hoover, acting without the benefit of legal counsel, listed PHH Mortgage as a creditor in the bankruptcy case and PHH received notice of Plaintiff Hoover's bankruptcy filing directly from the court a few days after the filing. (Ms. Hoover, having no formal legal training, did not list QLS as a "creditor" at that time because her understanding was that she did not owe any money to QLS. Nevertheless, as discussed below, QLS received actual notice of the bankruptcy filing.) PHH also acknowledged receiving actual notice prior to the foreclosure sale by phone with Ms. Hoover.

16. At all times relevant to this complaint, Plaintiff Hoover lived at 18205 106th St E, Bonney Lake, WA 98391 ("the Property" or "the Home"), along with her husband and two children. Her adult niece also stays at her home with her three children, ages 11, 10 and 2 years old.

17. The legal description of the property is as follows:

LOT 3 PLAT OF CRYSTAL MEADOWS RECORDED MAY 14, 2004,
UNDER RECORDING NO. 200405145003, RECORDS OF PIERCE COUNTY
WASHINGTON. SITUATE IN THE CITY OF BONNEY LAKE, COUNTY OF
PIERCE, STATE OF WASHINGTON.

A.P.N. 7001740030

18. The Home was originally purchased by Plaintiff Hoover's father, Ali Suleiman, in 2005 with the intention that Plaintiff Hoover would inherit it.

19. In 2015, Ali Suleiman passed away, and in his will, he named Plaintiff Hoover as one of the co-personal representatives of his estate (the other representative being her brother, Amir Suleiman). *See* King County Superior Court case no. 15-4-01840-7 KNT, (non-probate estate matter).

COMPLAINT FOR WILLFUL VIOLATION OF THE
AUTOMATIC STAY UNDER 11 USC § 362(k)(1) - 4

HENRY & DEGRAAFF, P.S.
787 MAYNARD AVE S.
SEATTLE, WASHINGTON 98104
telephone (206) 330-0595
fax (206) 400-7609

Case 20-04002-MJH    Doc 1    Filed 01/25/20    Ent. 01/25/20 16:59:04    Pg. 4 of 15

20. Ali Suleiman also had an irrevocable trust (the "Suleiman Trust") of which Plaintiff Hoover was a co-trustee, and which provided that she would inherit the Home upon his death, which is generally understood as a non-probate transfer.

21. After Ali Suleiman's passing, Plaintiff Hoover was advised (whether correctly or incorrectly) that transferring title of the property into her name would be time-consuming and likely expensive (costing several thousand dollars), so the Home remained in the Suleiman Trust, which – again – specifically provided that Ms. Hoover possessed all rights to the property.

22. However, Ali Suleiman died with a mortgage loan remaining on the Home, serviced by Ocwen Home Loan Servicing, LLC ("Ocwen")[2], and to which Plaintiff Hoover paid the ongoing mortgage payments after his death until falling behind in 2018.

23. In January 2019, after several months of delinquent payments, Plaintiff Hoover began discussions with Ocwen / PHH (who completed of its merger with PHH Mortgage in June 2019 and now services Hoover's mortgage in the name PHH Mortgage Services) to fix the problem.

24. Ocwen / PHH led Plaintiff Hoover to believe that she could complete an "assumption" of the mortgage and so she sent in the documents specifically requested, including a copy of her father's death certificate and information concerning her inheritance in the Property through the Suleiman Trust.

25. Nevertheless, in May 2019, Plaintiff Hoover received a Notice of Trustee's Sale dated May 9, 2019, indicating that a foreclosure would take place on her Property on September 13, 2019. The notice was addressed to her personally, Sarah Hoover, not to the estate of her father or any other entity. *See* Exhibit A.

26. Upon receipt of the Notice of Trustees' Sale, Plaintiff Hoover contacted Ocwen / PHH again and she sent in a signed "Assumption of Liability Agreement" to Ocwen / PHH on or

---

[2] PHH Mortgage merged with Ocwen, combined their operations and now is servicing Ocwen mortgage loans under the name, PHH Mortgage. *See* https://www.phhmortgage.com/article/phh-mortgage-is-joining-the-ocwen-family (last accessed on January 24, 2020).

COMPLAINT FOR WILLFUL VIOLATION OF THE
AUTOMATIC STAY UNDER 11 USC § 362(k)(1) - 5

HENRY & DEGRAAFF, P.S.
787 MAYNARD AVE S.
SEATTLE, WASHINGTON 98104
telephone (206) 330-0595
fax (206) 400-7609

Case 20-04002-MJH    Doc 1    Filed 01/25/20    Ent. 01/25/20 16:59:04    Pg. 5 of 15

about May 17, 2019, to finally put the property into her name in Ocwen / PHH's mortgage servicing records. On June 1, 2019, servicing for Hoover's loan began being handled in the name of PHH Mortgage but, while the name of the servicer changed, the actual entity servicing the mortgage was the same, as Ocwen and PHH had merged into a single company.

27. However, Hoover's calls to PHH Mortgage in June 2019 were like essentially starting over, since PHH claimed to no longer have any information about Hoover's efforts to assume the mortgage loan.

28. Upon learning that it did not have Ms. Hoover's information, PHH remarkably allowed the foreclosure to go forward, rather than performing an investigation.

29. Nonetheless, Hoover attempted to contact PHH Mortgage numerous times over the next few months via phone, letter and fax in response to contradictory and confusing directions given by representatives at PHH Mortgage in an attempt to provide enough information to substantiate her ownership interest in the Property and to assume the loan and obtain a loan modification. *At no point did anyone ever tell Ms. Hoover that this would not be possible*.

30. When she inquired about the status of the foreclosure and mentioned QLS, the PHH Mortgage representatives also told her to ignore anything from QLS because they had no idea who QLS was.

31. During this time period, Ms. Hoover received communications not only from PHH but also from an entity called New Rez, a company purporting to act "on behalf of" PHH Mortgage. Over the ensuing few months, Ms. Hoover received communications both from PHH and New Rez, which was confusing to her, but in any event, PHH and New Rez acted in concert to insist that the foreclosure go forward.

32. Ms. Hoover now believes that all actions done by Ocwen / PHH were also done in concert with New Rez.

33. Finally, in August 2019, a PHH Mortgage representative told Hoover that she would need speak to QLS who PHH confusingly referred to as their "attorney " to stop the

COMPLAINT FOR WILLFUL VIOLATION OF THE
AUTOMATIC STAY UNDER 11 USC § 362(k)(1) - 6

HENRY & DEGRAAFF, P.S.
787 MAYNARD AVE S.
SEATTLE, WASHINGTON 98104
telephone (206) 330-0595
fax (206) 400-7609

Case 20-04002-MJH    Doc 1    Filed 01/25/20    Ent. 01/25/20 16:59:04    Pg. 6 of 15

foreclosure sale since it was unlikely that she would obtain a mortgage loan modification prior to the sale. At that point she was given the phone number for QLS, she called them and spoke to Robert McDonald, QLS' general counsel, and was given some information concerning the foreclosure sale pending on her Home.

34. In early September, after three weeks of delay, QLS finally sent Ms. Hoover a letter attached to an email which provided reinstatement figures for the loan and informed her that she would need to pay $27,695.82 by September 12, 2019 to reinstate the mortgage and avoid foreclosure. In that letter QLS identified Sarah Hoover as the requester and also as the borrower, just acknowledging her interest in the Property.

35. With few options left and the foreclosure fast approaching on September 13, 2019, Ms. Hoover began to realize that she had no other options but to file for bankruptcy protection if she was to save her family home. Thus, acting pro se, Ms. Hoover filed a short file petition for Chapter 13 bankruptcy on September 9, 2019 in the United States Bankruptcy Court for the Western District of Washington – Tacoma, Case No. 19-42890-MJH, listing PHH Mortgage as a creditor. As stated above, Ms. Hoover did not have counsel, and thus did not believe QLS to be a "creditor," and did not list QLS as one of her "creditors." Ms. Hoover correctly filed the petition with her correct name and social security number.

36. With only $27,695.82 owing in arrears, the Home sold for $356,000, leaving surplus funds of $167,407.96. At the time of the foreclosure, the fair market value of the property was at least $407,000. There is no doubt that a chapter 13 plan that either cured the arrears or sold the property would have produced a greater return for Plaintiff Hoover than the foreclosure sale as she had regular income that would support the adequate plan payments. *See* Exhibit C. However, after seeing that the foreclosure sale proceeded despite her bankruptcy filing, Ms. Hoover realized the futility of pressing forward with her bankruptcy, and simply let the bankruptcy dismiss. From Ms. Hoover's standpoint, nothing she did had any effect on the foreclosure of the loan, and even her bankruptcy filing was wholly ineffectual.

COMPLAINT FOR WILLFUL VIOLATION OF THE AUTOMATIC STAY UNDER 11 USC § 362(k)(1) - 7

HENRY & DEGRAAFF, P.S.
787 MAYNARD AVE S.
SEATTLE, WASHINGTON 98104
telephone (206) 330-0595
fax (206) 400-7609

Case 20-04002-MJH    Doc 1    Filed 01/25/20    Ent. 01/25/20 16:59:04    Pg. 7 of 15

37. Just before filing for bankruptcy, Hoover had also hired a document-preparation company called Elite Legal Network as one last possible avenue to assist her with a loan modification with PHH Mortgage, and on September 9, 2019, Elite Legal Network sent a fax to PHH Mortgage on Ms. Hoover's behalf containing information about her bankruptcy filing. *See* Exhibit B.

38. On Thursday, September 12, 2019, the day before the foreclosure sale, Plaintiff Hoover called PHH Mortgage at least twice and confirmed with their representative that her bankruptcy filing had been "added," but that whatever department was to issue a "stop" on the foreclosure had not yet done so. These sorts of phrasings meant little to Ms. Hoover, who simply wanted to work out a payment plan to come current on her loan.

39. Despite everything Ms. Hoover had done to save her family home, PHH did not direct QLS to cease the sale, and the Property sold at a nonjudicial foreclosure sale on September 13, 2019 to a third-party purchaser, IH6. However, from a legal standpoint, since Plaintiff Hoover had filed a Chapter 13 bankruptcy prior to the foreclosure sale, it is black-letter law that the sale was void. *See In re Schwartz*, 954 F.2d 569 (9th Cir. 1992).

40. A few days later, Plaintiff Hoover spoke with a PHH Mortgage representative named Melvin about the bankruptcy and her inheritance of the Property in the Suleiman Trust, and – somewhat to her surprise – Melvin actually called her back on September 19, 2019 to follow up after doing additional research.

41. In that phone call, Melvin from PHH Mortgage claimed that Hoover's bankruptcy filing did not have any effect on the mortgage loan because she was not a "successor in interest to the Property," and he claimed that he was unable to find documents she had provided numerous times to Ocwen / PHH. However, Melvin later admitted that there were over 600 documents and emails in her file and it would be too time-consuming to read them all. In any case, Melvin suggested that Hoover send over relevant documents again to PHH Mortgage.

COMPLAINT FOR WILLFUL VIOLATION OF THE
AUTOMATIC STAY UNDER 11 USC § 362(k)(1) - 8

**HENRY & DEGRAAFF, P.S.**
787 MAYNARD AVE S.
SEATTLE, WASHINGTON 98104
telephone (206) 330-0595
fax (206) 400-7609

Case 20-04002-MJH    Doc 1    Filed 01/25/20    Ent. 01/25/20 16:59:04    Pg. 8 of 15

42. On September 19, 2019, on Ms. Hoover's behalf, Elite Legal Network sent another fax to PHH Mortgage with more information. A true and correct copy of this fax is attached hereto as **Exhibit C.** .

43. Meanwhile, on September 17, 2019, a mere <u>four days</u> after the nonjudicial foreclosure sale on the Property, QLS sent the Trustee's Deed to the third-party purchaser of the property, IH6. A copy of the Trustee's Deed is Attached hereto as **Exhibit D.**

44. Also, on September 20, 2019, NewRez (an agent acting on behalf of PHH Mortgage) sent a letter confirming that it could speak with Elite Legal Network with respect to the loan. A true and correct copy of this letter is attached hereto as **Exhibit E.**

45. QLS – the foreclosing trustee on the Property – also admits receiving actual notice on September 24, 2019 that the daughter/heir of the estate of Ali Suleiman filed bankruptcy on September 9, 2019. *See* **Exhibit F.** However, QLS did nothing to stop the recording of the Trustee's Deed on September 26, 2019, two days after QLS had actual notice of Hoover's bankruptcy filing, the Trustee's Deed was recorded on the Property. *See* **Exhibit G.**

46. The Trustee's sale generated $167,407.96 in surplus funds, which QLS has been holding since the sale. At the very minimum, these funds would belong to Ms. Hoover if the sale were proper (which, due to bankruptcy law, it was not). However, QLS neither rescinded the sale nor provided Ms. Hoover access to the surplus funds. Indeed, QLS never gave notice to anyone about the $167,407.96 and have not deposited it into the court registry. It is unclear on what basis QLS may indefinitely retain surplus funds, and to whom interest on that amount is payable.

47. Even though it is now known that PHH had actual notice of the bankruptcy filing prior to the sale, this fact was apparently not conveyed by PHH to QLS. Curiously, when QLS received actual notice of the bankruptcy filing on September 24, 2019 (at the latest), QLS did not communicate with PHH (despite a void foreclosure sale having just been held). It is unclear whether PHH and QLS have had any interactions at all beyond the unimpeded directive to sell Ms. Hoover's property at all costs.

COMPLAINT FOR WILLFUL VIOLATION OF THE
AUTOMATIC STAY UNDER 11 USC § 362(k)(1) - 9

**HENRY & DEGRAAFF**, P.S.
787 MAYNARD AVE S.
SEATTLE, WASHINGTON 98104
telephone (206) 330-0595
fax (206) 400-7609

Case 20-04002-MJH    Doc 1    Filed 01/25/20    Ent. 01/25/20 16:59:04    Pg. 9 of 15

48. In fact, when Hoover contacted QLS several times in October 2019 about rescinding the foreclosure sale, QLS took no action to help her.

49. IH6, the third-party purchaser of the Property, wasted little time in taping a notice to Ms. Hoover's door on September 26, 2019, informing her that IH6 was the new owner, and instructing her to vacate the property by December 1, 2019. Plaintiff Hoover's conversations with the representative from IH6 indicated that he would be happy to sell the home back to her for an additional profit of $100,000, but he also indicated that he had no interest in proactively rescinding the sale.

50. In formal written correspondence on November 26, 2019, December 12, 2019 and on January 8, 2020, QLS, IH6, and PHH Mortgage received yet further notice of the violation of the bankruptcy stay, additional information about Hoover's status as the owner of the Property, their affirmative duty to rescind the void foreclosure sale, and actual damages that Ms. Hoover suffered and continues to suffer from the aforementioned violation of the automatic stay and void foreclosure sale. Hoover originally gave the parties until February 3, 2020 to resolve the matter or she would be forced to file a complaint with the bankruptcy court.

51. Additionally, Ms. Hoover's counsel, Christina Henry, exchanged numerous emails with QLS and IH6 about the stay violation, but they made no effort to contact PHH Mortgage or actively take any action to rescind the sale.

52. Hoover, in good faith, Ms. Hoover (through counsel) continued to contact PHH Mortgage and provide them enough information so that they could actively engage in a resolution of this matter. To date, PHH Mortgage has done nothing to acknowledge the void foreclosure or remedy the stay violation.

53. The only information received from PHH Mortgage in response to Ms. Hoover's correspondence is an acknowledgement on December 24, 2019 that they finally confirmed Ms. Hoover confirmed as the Successor in Interest for the Mortgage Loan, however, they did not acknowledge the void foreclosure sale. *See* **Exhibit H**.

COMPLAINT FOR WILLFUL VIOLATION OF THE
AUTOMATIC STAY UNDER 11 USC § 362(k)(1) - 10

HENRY & DEGRAAFF, P.S.
787 MAYNARD AVE S.
SEATTLE, WASHINGTON 98104
telephone (206) 330-0595
fax (206) 400-7609

Case 20-04002-MJH    Doc 1    Filed 01/25/20    Ent. 01/25/20 16:59:04    Pg. 10 of 15

54.     At all times relevant to this matter, Ocwen / PHH and New Rez's actions were taken on behalf of, under the direct and supervision of, and for the benefit of, its principal, HSBC. HSBC had actual or constructive knowledge, as principal, of the actions of its agents, Ocwen / PHH and New Rez, including, without limitation, because Ocwen / PHH and New Rez's actions were taken in whole or in part pusurant to Ocwen / PHH and New Rez's servicing guidelines and rules. Had Ocwen / PHH and New Rez not followed HSBC's servicing guidelines and rules, it could or would have been subject to sanctions, including monetary penalties and/or termination from Ocwen / PHH and New Rez's servicing program.

55.     On January 10, 2020, without any effort to rectify this matter with PHH Mortgage and Plaintiff Hoover, IH6 filed a motion to reopen the bankruptcy case and annul the automatic stay, despite knowing about the stay violation from Plaintiff Hoover soon after posting the notice to vacate on her door on September 25, 2019. What IH6 apparently fails to realize is that Ms. Hoover is not their adversary, but that IH6 was sold a home at a void foreclosure sale – which the trustee could have easily rescinded – and that any harm caused to IH6 was directly caused by the remaining Defendants in this action. Instead, by seeking to profit at Ms. Hoover's expense by ignoring Ms. Hoover's pleas and seeking to annul the stay (instead of seeking damages from PHH or QLS), IH6 may have itself violated the automatic stay, given its actions and knowledge.

56.     Overall, Ms. Hoover did everything expected of a responsible person (such as by working for months with PHH and New Rez), and even when she was forced to file for bankruptcy protection, she did not receive any of the protection specifically afforded to her by the bankruptcy code. Making matters worse, all Defendants in this action have thumbed their noses at Ms. Hoover's repeated efforts exhorting Defendants to simply comply with the automatic stay. This is not what the Bankruptcy Code intended.

### IV.     CAUSES OF ACTION

### Count I – Violation of the Automatic Stay

57.     Plaintiff repeats and re-alleges the allegations set forth in paragraph 1 through 56 above.

COMPLAINT FOR WILLFUL VIOLATION OF THE
AUTOMATIC STAY UNDER 11 USC § 362(k)(1) - 11

HENRY & DEGRAAFF, P.S.
787 MAYNARD AVE S.
SEATTLE, WASHINGTON 98104
telephone (206) 330-0595
fax (206) 400-7609

Case 20-04002-MJH    Doc 1    Filed 01/25/20    Ent. 01/25/20 16:59:04    Pg. 11 of 15

58. HSBC, PHH Mortgage, New Rez, QLS, and IH6, owed a duty to respect protections created by the bankruptcy stay pursuant to 11 U.S.C. § 362 *et seq*.

59. PHH Mortgage (including New Rez who it acted in concert with), received actual notice of Hoover's bankruptcy filing on September 9, 2019, more than four days before the sale and yet, did nothing to stop the sale or rescind the sale to remedy the stay violation – even after receiving at least four formal notices which detailed the issues in this matter. HSBC had constructive or actual notice of the bankruptcy filing, as principal, of the actions of its agents, PHH Mortgage and New Rez.

60. The other Defendants, QLS and IH6, also openly refused to take any actions to remedy the stay violation, despite receiving actual notice of the bankruptcy filing soon after the filing.

61. Perhaps exacerbating matters between Defendants, QLS had actual knowledge of Hoover's bankruptcy filing on September 24, 2019, on the eleventh day after the bankruptcy filing of September 9, 2019, when QLS still had power under the Washington State Deed of Trust Act to easily rescind the sale and remedy the stay violation, and instead they chose to do nothing. RCW 61.24.050(2)(a).

62. IH6 also knew about the bankruptcy filing in late September or early October 2019 and, instead of taking affirmative steps to remedy the stay violation and take steps to rescind the sale, it attempted to profit *at the expense of the debtor, Ms. Hoover,* by telling her that she could buy back her property for an additional $100,000 in profit to IH6.

63. All Defendants failed to act upon notice of the Plaintiff's bankruptcy proceeding as required under 11 USC § 362(k)(1). *See Sternberg v. Johnston*, 595 F.3d 937, 942 (9th Cir. 2010) (Holding that, after learning of the bankruptcy filing and automatic stay, a creditor has an **affirmative duty** to take corrective action to remedy the stay violation).

64. The repeated failures and refusals to affirmatively remedy the stay violation after actual notice is the type of "appropriate circumstance" that allows for punitive damages under 11 U.S.C. § 362(k)(1).

COMPLAINT FOR WILLFUL VIOLATION OF THE
AUTOMATIC STAY UNDER 11 USC § 362(k)(1) - 12

HENRY & DEGRAAFF, P.S.
787 MAYNARD AVE S.
SEATTLE, WASHINGTON 98104
telephone (206) 330-0595
fax (206) 400-7609

Case 20-04002-MJH    Doc 1    Filed 01/25/20    Ent. 01/25/20 16:59:04    Pg. 12 of 15

65. The ongoing inaction by HSBC, PHH Mortgage, New Rez, QLS and IH6 shows a total indifference to the bankruptcy laws and the automatic stay.

    a. The failure of QLS to (a) have policies and procedures in place to hold a trustee's deed until eleven days after a foreclosure sale (the time period in which rescission may easily occur by the trustee for reasons such as learning of bankruptcy filings under RCW 61.24.050(2)(a)), especially in light of the recent changes to Washington State's Deed of Trust Act under RCW 61.24.030(10), that allows a trustee to foreclose on the property of a deceased person through the nonjudicial foreclosure process; (b) to refuse to communicate with the mortgage servicer – *its own client* – to assist in rescinding the sale upon receiving actual knowledge of a void foreclosure, (c) to hold surplus funds indefinitely without any attempt to remedy the stay violation or without any notice to the affected parties; (d) to assist the third party purchaser, IH6 to annul the stay to coverup its own wrongdoing; and (e) to insist that the debtor take all measures to rescind the sale, demonstrates a reckless or callous disregard for the law and/or the rights of others. *See In re Snowden*, 769 F.3d 651, 657 (9th Cir. 2014); *In re Bloom*, 875 F.2d 2245, 228 (9th Cir. 1989).

    b. PHH Mortgage (including New Rez who acted in concert with PHH and on behalf of HSBC) (a) engaged in conduct that misled Ms. Hoover about which entity she was communicating with about her Mortgage Loan and needlessly prolonged the process to recognize her as the successor in interest to the mortgage loan and/or personal representative to her father's estate with authority to discuss matters concerning the mortgage loan; (b) failed to have effective policies and procedures to handle the mortgage loans of deceased borrowers; (c) made inaccurate and misleading statements to Ms. Hoover about the effect of her bankruptcy filing in regard to the foreclosure on her

COMPLAINT FOR WILLFUL VIOLATION OF THE
AUTOMATIC STAY UNDER 11 USC § 362(k)(1) - 13

Henry & DeGraaff, P.S.
787 Maynard Ave S.
Seattle, Washington 98104
telephone (206) 330-0595
fax (206) 400-7609

Case 20-04002-MJH    Doc 1    Filed 01/25/20    Ent. 01/25/20 16:59:04    Pg. 13 of 15

Home, when they had actual notice prior to the foreclosure sale and shortly thereafter; (d) received written communications from Ms. Hoover's attorney about the bankruptcy stay violation, yet failed to contact QLS, IH6, Ms. Hoover and/or her attorney to start the process of rescinding the foreclosure sale or discuss other remedial steps, demonstrating a reckless or callous disregard for the law and/or the rights of others. *See Id.*

  c. IH6 tried to extort Ms. Hoover to buy back her own house once they realized they had purchased it in a void foreclosure sale and then refused to take any measures to assist in remedying the violation as Ms. Hoover repeatedly put them on notice of the issue through her attorney. Additionally, by filing the motion to annul the stay in concert with QLS instead of assisting Ms. Hoover with a resolution they exacerbated the effects of the bankruptcy stay violation. Regardless of the circumstances that led them to purchase the Property, IH6 does not have agency to make matters worse after learning of a bankruptcy stay violation.

66. Plaintiff Hoover has incurred significant actual damages, including travel costs to her attorney's office, actual damages in the form of attorney's fees to investigate this matter and mitigate it prior to filing this lawsuit, to defend against IH6 brazen efforts to annul the stay in bankruptcy court, and to litigate this stay violation case to remedy the ongoing stay violation associated with the void foreclosure on her Property.

67. Additionally, as a direct result of PHH Mortgage and QLS' failure to affirmatively remedy their stay violation, and IH6 threats to only sell back her home to her for a $100,000 premium has led Plaintiff Hoover to experienced significant and substantial emotional distress (also categorized as actual damages) as she worries about when and whether she will have to move her family from her home and lose the safety and comfort of the Home she inherited from her father.

## V. CONCLUSION

COMPLAINT FOR WILLFUL VIOLATION OF THE
AUTOMATIC STAY UNDER 11 USC § 362(k)(1) - 14

HENRY & DEGRAAFF, P.S.
787 MAYNARD AVE S.
SEATTLE, WASHINGTON 98104
telephone (206) 330-0595
fax (206) 400-7609

Case 20-04002-MJH    Doc 1    Filed 01/25/20    Ent. 01/25/20 16:59:04    Pg. 14 of 15

WHEREFORE, the Plaintiffs request the Court to:

(1) Declare that HSBC, PHH Mortgage, New Rez, QLS and IH6 failed to affirmatively take action to remedy the stay violation once it was known, in violation of the automatic stay 11 U.S.C. § 362(k)(1);

(2) Declare that Plaintiff Hoover incurred actual damages under 11 U.S.C. § 362(k)(1) in the form of attorney's fees and significant emotional distress as a result of HSBC, PHH Mortgage, New Rez, QLS and IH6's inaction.

(3) Award actual damages to Plaintiff, including costs and attorney's fees, for the ongoing stay violation under 11 U.S.C. § 362(k)(1).

(4) Declare that punitive damages are appropriate in this instance because the actions (and inactions) of HSBC, PHH Mortgage, New Rez, and QLS– including the lack of relevant policies and procedures for nonjudicial foreclosures for deceased persons, and their handling of Trustee Deeds prior to eleven days after a foreclosure sale– caused an outcome whereby Plaintiff's Home was wrongfully foreclosed, despite filing bankruptcy, <u>regardless of any actions Plaintiffs could have taken</u>., in violation of 11 U.S.C. § 362(k)(1).

(5) Award attorney's fees and costs for this litigation as actual damages under 11 U.S.C. § 362(k)(1).

Dated this January 25, 2020.

| HENRY & DEGRAAFF, P.S. | ANDERSON SANTIAGO, PLLC |
|---|---|
| By: <u>/s/ Christina L Henry</u><br>Christina L Henry, WSBA# 31273<br>Attorney for the Plaintiffs<br>787 Maynard Ave S<br>Seattle, WA 98104<br>Tel# 206-330-0595<br>chenry@hdm-legal.com | By: <u>/s/ Jason Anderson</u><br>Jason Anderson, WSBA# 38014<br>Attorney for the Plaintiffs<br>787 Maynard Ave S<br>Seattle, WA 98104<br>Tel# 206-395-2665<br>jason@alkc.net |

COMPLAINT FOR WILLFUL VIOLATION OF THE
AUTOMATIC STAY UNDER 11 USC § 362(k)(1) - 15

HENRY & DEGRAAFF, P.S.
787 MAYNARD AVE S.
SEATTLE, WASHINGTON 98104
telephone (206) 330-0595
fax (206) 400-7609

Case 20-04002-MJH    Doc 1    Filed 01/25/20    Ent. 01/25/20 16:59:04    Pg. 15 of 15