THE HONORABLE MARY JO HESTON
Chapter 13
Date of Hearing: November 20, 2020
Time of Hearing: 9:00 a.m.
Hearing Location: Telephonic
Reply Due: November 13, 2020

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

UNITED STATES BANKRUPTCY COURT

WESTERN DISTRICT OF WASHINGTON AT TACOMA

| | |
|---|---|
| In re | Chapter 13 |
| SARAH HOOVER, | Case No.: 19-42890-MJH |
| Debtor. | Adversary No.: 20-04002-MJH |
| SARAH HOOVER, | **DECLARATION OF RYAN S. MOORE IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT** |
| Plaintiff, | |
| vs. | |
| QUALITY LOAN SERVICE CORPORATION OF WASHINGTON, PHH MORTGAGE CORPORATION D/B/A PHH MORTGAGE SERVICES, HSBC BANK USA, N.A., AS TRUSTEE OF THE FIELDSTONE MORTGAGE INVESTMENT TRUST, SERIES 2006-2, NEWREZ, LLC, AND IH6 PROPERTY WASHINGTON, L.P. D/B/A INVITATION HOMES | |
| Defendants. | |

*/ /*

*/ /*

DECLARATION IN SUPPORT OF DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT
AP No. 20-04002-MJH
Page 1

HOUSER LLP
600 University St., Ste. 1708
Seattle, WA 98101
PH: (206) 596-7838
FAX: (206) 596-7839

Case 20-04002-MJH    Doc 63    Filed 10/16/20    Ent. 10/16/20 21:12:35    Pg. 1 of 40

# DECLARATION OF RYAN S. MOORE

I, Ryan S. Moore, do hereby declare:

1.      I am more than 18 years of age, am competent to make this declaration, and have personal knowledge of the facts set forth in this declaration.

2.      I am an attorney of record for Defendants PHH Mortgage Corporation D/B/A PHH Mortgage Services, HSBC Bank USA, N.A., as Trustee of the Fieldstone Mortgage Investment Trust, Series 2006-2, and NewRez, LLC (collectively, the "Defendants").

3.      Attached hereto as <u>Exhibit A</u> is a true and correct copy of the Deed of the Property at issue to Ali Suleiman. This document is publicly available through the Pierce County Recording Office.

4.      Attached hereto as <u>Exhibit B</u> is a true and correct copy of the Deed of real property located at 24805 22nd Avenue South, Kent, WA 98032 ("Kent Property") to Ali Suleiman. This document is publicly available through the King County Recording Office.

5.      Attached hereto as <u>Exhibit C</u> is a true and correct copy of the Deed of the Kent Property from Ali Suleiman to the Ali Suleiman Trust. This document is publicly available through the King County Recording Office.

6.      Attached hereto as <u>Exhibit D</u> is a true and correct copy of the Deed of real property located at 3435 Auburn Way, South #63, Auburn, WA ("Auburn Property") to Ali Suleiman. This document is publicly available through the King County Recording Office.

7.      Attached hereto as <u>Exhibit E</u> is a true and correct copy of the Deed of the Auburn Property from Ali Suleiman to the Ali Suleiman Trust. This document is publicly available through the King County Recording Office.

8.      Attached hereto as <u>Exhibit F</u> is a true and correct copy of the Deed of the Auburn Property from the Ali Suleiman Trust to Mr. and Mrs. Desteunder. This document is publicly available through the King County Recording Office.

DECLARATION IN SUPPORT OF DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT
AP No. 20-04002-MJH
Page 2

HOUSER LLP
600 University St., Ste. 1708
Seattle, WA 98101
PH: (206) 596-7838
FAX: (206) 596-7839

Case 20-04002-MJH   Doc 63   Filed 10/16/20   Ent. 10/16/20 21:12:35   Pg. 2 of 40

1    9.    Attached hereto as <u>Exhibit G</u> is a true and correct copy of the Deed of the Kent

2  Property from the Ali Suleiman Trust to Mr. Wang and Ms. Mayovsky. This document is publicly

3  available through the King County Recording Office.

4    10.    Attached hereto as <u>Exhibit H</u> is a true and correct copy of selected excerpts from

5  Plaintiff Sarah Hoover's deposition transcript, which was taken on August 18, 2020.

6    11.    Attached hereto as <u>Exhibit I</u> is a true and correct copy of selected excerpts from

7  third-party Amir Suleiman's deposition transcript, which was taken on July 10, 2020.

8    I declare under penalty of perjury under the laws of the United States of America that the

9  foregoing is true and correct.

10

11  DATED October 16, 2020, at Kirkland, Washington.

12

13                          **HOUSER LLP**

14                          *s/ Ryan S. Moore*
                          Ryan S. Moore, WSBA No. 50098

15

16

17

18

19

20

21

22

23

24

25

26

DECLARATION IN SUPPORT OF DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT
AP No. 20-04002-MJH
Page 3

HOUSER LLP
600 University St., Ste. 1708
Seattle, WA 98101
PH: (206) 596-7838
FAX: (206) 596-7839

Case 20-04002-MJH    Doc 63    Filed 10/16/20    Ent. 10/16/20 21:12:35    Pg. 3 of 40

**CERTIFICATE OF SERVICE**

On October 16, 2020, I served the foregoing document(s): DECLARATION OF RYAN S. MOORE IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT, in the manner described below:

Jason D. Anderson
Anderson Law of King County, PLLC
787 Maynard Ave S., Suite B
Seattle, WA 98104
Jason@alkc.net
*Counsel for Plaintiff/Debtor*

☑ CM/ECF
☐ UPS Overnight
☐ UPS 2 Day Shipping
☐ Email
☐ Courier

Christina L. Henry
Henry & Degraaff, P.S.
787 Maynard Ave S., Suite B
Seattle, WA 98104
chenry@hdm-legal.com
*Counsel for Plaintiff/Debtor*

☑ CM/ECF
☐ UPS Overnight
☐ UPS 2 Day Shipping
☐ Email
☐ Courier

Joseph W. McIntosh
McCarthy & Holthus, LLP
108 1st Ave South, Suite 300
Seattle, WA 98104
jmcintosh@mccarthyholthus.com
*Counsel for Quality Loan Service*
*Corporation of Washington*

☑ CM/ECF
☐ UPS Overnight
☐ UPS 2 Day Shipping
☐ Email
☐ Courier

John A. McIntosh
Schweet Linde & Coulson, PLLC
575 S. Michigan St.
Seattle, WA 98108
johnm@schweetlaw.com
*Counsel for IH6 Property Washington,*
*L.P.*

☑ CM/ECF
☐ UPS Overnight
☐ UPS 2 Day Shipping
☐ Email
☐ Courier

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Dated: October 16, 2020

*Rachel M. Perez*
Rachel M. Perez

DECLARATION IN SUPPORT OF DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT
AP No. 20-04002-MJH
Page 4

HOUSER LLP
600 University St., Ste. 1708
Seattle, WA 98101
PH: (206) 596-7838
FAX: (206) 596-7839

Case 20-04002-MJH    Doc 63    Filed 10/16/20    Ent. 10/16/20 21:12:35    Pg. 4 of 40

7055980

Fidelity National Title

After Recording Return to:
ALI SULIEMAN
18205 106TH STREET EAST
BONNEY LAKE WA 98391

Filed for Record at Request of:
FIDELITY NATIONAL TITLE INSURANCE COMPANY
2700 BRIDGEPORT WAY W STE F
UNIVERSITY PLACE, WA 98466

Escrow No.: 7055980-BLC

Abbreviated Legal: Lot 3, CRYSTAL MEADOWS, ,
Assessor's Tax Parcel No.: 7001740030

### STATUTORY WARRANTY DEED

THE GRANTOR SUNCREST BUILDERS, INC., a Washington Corporation
for and in consideration of TEN DOLLARS AND OTHER VALUABLE CONSIDERATION in hand paid,
conveys and warrants to ALI SULIEMAN, unmarried man
the following described real estate, situated in the County of Pierce, State of Washington:

LOT 3 PLAT OF CRYSTAL MEADOWS RECORDED MAY 14, 2004 UNDER PIERCE COUNTY
RECORDING NO. 200405145003, RECORDS OF PIERCE COUNTY, WASHINGTON.

SITUATE IN THE CITY OF BONNEY LAKE, COUNTY OF PIERCE, STATE OF WASHINGTON.

SUBJECT TO: EASEMENTS, RESTRICTIONS, RESERVATIONS, COVENANTS, CONDITIONS AND
AGREEMENTS OF RECORD AS DESCRIBED IN THE PRELIMINARY TITLE REPORT UNDER ORDER
NUMBER 7055980, PROVIDED BY FIDELITY NATIONAL TITLE.

Dated: November 1, 2005

SUNCREST BUILDERS, INC.

By GLENN A. KUZMANICH
PRESIDENT

STATE OF WASHINGTON
COUNTY OF PIERCE

I certify that I know or have satisfactory evidence that GLENN A. KUZMANICH the person(s) who appeared before
me, and said person(s) acknowledged that they signed this instrument, on oath stated that theyare authorized to
execute the instrument and acknowledged it as the PRESIDENT of SUNCREST BUILDERS, INC. to be the free and
voluntary act of such party for the uses and purposes mentioned in this instrument.

Dated: _____ 11/3/05 _____

_____
Notary Public in and for the State of Washington
Residing at Tacoma
My appointment expires: 10/29/08

BRENDA L. COOK
NOTARY PUBLIC
STATE OF WASHINGTON
COMMISSION EXPIRES
DECEMBER 29, 2008

4105482 1 PG

11-04-2005 03:46pm RCAROVA    PRO. FEE:$0.00
EXCISE COLLECTED:$5,339.11   COUNTY FEE:$0.00
PAT MCCARTHY, AUDITOR        STATE FEE:$5.00
PIERCE COUNTY, WA

Exhibit A (P. 1 of 1)

Case 20-04002-MJH    Doc 63    Filed 10/16/20    Ent. 10/16/20 21:12:35    Pg. 5 of 40

After recording return to
ALI SULEIMAN
24805 22ND AVENUE SOUTH
KENT WA 98032

**20001114001342**

```
WASHINGTON TIT WD      9 00
PAGE 001 OF 002
11/14/2000 15:16
KING COUNTY, WA
```

**E1786810**

```
11/14/2000 15:05
KING COUNTY, WA
TAX          $3,284 00
SALE    $150,000 00
```

Filed for Record at the Request of
Washington Title Company          F236718          PAGE 001 OF 001

236718-2                                    LPB-10      9 -

## STATUTORY WARRANTY DEED

**THE GRANTOR** DANIEL W DONIHUE and STAYCI R DONIHUE, husband and wife

for and in consideration of Ten Dollars and Other Good and Valuable Consideration

in hand paid, conveys and warrants to      ALI SULEIMAN, a married man, as his separate estate,

the following described real estate, situate in the County of KING, State of Washington·

Lot(s) 7, Block 2, Saltair Hills, according to the plat thereof recorded in Volume 59 of Plats, page(s) 39 through 41, inclusive in King County, Washington

Subject to easements, covenants, conditions and restrictions shown on Exhibit "A" as hereto attached and by this reference made a part hereof.

INITIAL _____

Tax Account No 752370-0115-00

Dated this 26th day of OCTOBER, 2000

By _____          By _Stayci R Donihue_
DANIEL W DONIHUE                    STAYCI R DONIHUE

By _____          By _____

STATE OF WASHINGTON      }
COUNTY OF    KING    }

On this day personally appeared before me DANIEL W. DONIHUE AND STAYCI R. DONIHUE to me known to be the individual(s) described in and who executed the within and foregoing instrument, and acknowleged that THEY signed the same as THEIR free and voluntary act and deed, for the uses and purposes therein mentioned.

Given under my hand and official seal this 30th day of OCTOBER, 2000

_____
TRASIE N WIM... 
Notary Public in and for the State of Washington
residing at BUCKLEY  My commission expires: 07-15-04

2000 111 4001342

Exhibit B (P. 1 of 2)

Unofficial Copy

Escrow No  F236718

## EXHIBIT "A"

**AN EASEMENT AFFECTING A PORTION OF SAID PREMISES FOR THE PURPOSES STATED THEREIN**

IN FAVOR OF                    Port of Seattle, a Washington State municipal corporation
FOR                            Avigation
DISCLOSED BY
INSTRUMENT RECORDED            May 8, 1997
RECORDING NUMBER              9705080987
AFFECTS·                       As constructed

**RESTRICTIONS CONTAINED ON THE FACE OF THE PLAT AS FOLLOWS:**

No lot or portion of a lot in this plat shall be divided and sold or resold, or ownership changed or transferred whereby the ownership of any portion of this plat shall be less than the area required for the use district in which it is located

**COVENANTS AND RESTRICTIONS CONTAINED IN DECLARATION OF PROTECTIVE RESTRICTIONS AND EASEMENTS, BUT OMITTING ANY COVENANT OR RESTRICTION BASED ON RACE, COLOR, RELIGION, SEX, HANDICAP, FAMILIAL STATUS, OR NATIONAL ORIGIN UNLESS AND ONLY TO THE EXTENT THAT SAID COVENANT (a) IS EXEMPT UNDER CHAPTER 42, SECTION 3607 OF THE UNITED STATES CODE OR (b) RELATES TO HANDICAP BUT DOES NOT DISCRIMINATE AGAINST HANDICAP PERSONS:**

RECORDED                       July 17, 1958
RECORDING NUMBER              4922804

**Easement for grading** of street slopes, as necessary, over portion of premises adjoining any street or alley

INITIAL _____          INITIAL _____

INITIAL _____

Unofficial Copy

Exhibit B (P. 2 of 2)

WHEN RECORDED RETURN TO
Ali Suleiman Trust
24805 22nd Ave So
Kent, WA 98032



**20040311001369**
ALBERTSON LAW    QCD
PAGE001 OF 002         20 00
03/11/2004 13.51
KING COUNTY, WA

**E2023566**
03/11/2004 13.51
KING COUNTY, WA
TAX         $2 00
SALE        $0 00              PAGE001 OF 001

Filed for Record at the Request of.
Albertson Law Group, P S
P O Box 1046
Kent, WA 98035-1046

### QUIT CLAIM DEED

**Grantor(s):**

   1    Ali Suleiman, a married man as his separate estate

**Grantee(s):**

   1    Ali Suleiman, Trustee of the Ali Suleiman Trust U/A dtd 11/25/2003, and
        Successors

**Legal Description:**

   1    Lot 7, Block 2, Saltair Hills, Vol 59, Pgs 39-41

**Assessor's Property Tax Parcel Account Number(s):    752370-0115-00**

GRANTOR, ALI SULEIMAN, A MARRIED MAN AS HIS SEPARATE ESTATE, for and in
consideration of One Dollar ($1 00) and other valuable consideration, conveys and quit claims to
ALI SULEIMAN, TRUSTEE OF THE ALI SULEIMAN TRUST U/A DTD 11/25/2003, AND
SUCCESSORS, the following described real estate, situate in the County of King, State of
Washington, together with all after acquired title of the Grantor therein

LOT(S) 7, BLOCK 2, SALTAIR HILLS, ACCORDING TO THE PLAT THEREOF
RECORDED IN VOLUME 59 OF PLATS, PAGE(S) 39 THROUGH 41, INCLUSIVE IN
KING COUNTY, WASHINGTON

Unofficial Copy

Exhibit C (P. 1 of 1)



20110921001082

Ticor Title Company
Escrow No.: 6479994

When recorded return to:

Amir Suleiman
24805 22nd Ave S
Kent, WA 98032

TICOR NATIONAL WD                    62.00
PAGE-001 OF 001
09/21/2011 16:02
KING COUNTY, WA

E2510626
09/21/2011 16:00
KING COUNTY, WA
TAX              $521.20
SALE          $29,000.00          PAGE-001 OF 001

TICOR TITLE    SPECIAL WARRANTY DEED
6479994-E ①          (Not Statutory)

**THE GRANTOR(S)**

U.S. Bank National Association, as Trustee for Structured Asset Investment Loan Trust, Mortgage
Pass-Through Certificates, Series 2005-10

for and in consideration of $29,000.00 in hand paid, bargains, sells, and conveys to

Amir Suleiman, a single person

the following described estate, situated in the County of King, State of Washington:

Unit 63, Building G, Winchester Heights, a Condominium, Survey Map and Plans recorded in
Volume 34 of Condominiums, page(s) 66 through 73, inclusive;
Condominium Declaration recorded under Recording Number(s) 7907190725 and amendments
thereto, in King County, Washington.
Together with Parking Space 63 (limited common element).

Tax Parcel Number(s): 9465500630

Dated:    September 16, 2011

U.S. Bank National Association, as Trustee for Structured Asset Investment Loan Trust, Mortgage
Pass-Through Certificates, Series 2005-10

BY:                        Barbara Durham
Authorized signer          Vice President

STATE OF    TEXAS

COUNTY OF    DENTON

On this 19 day of September, before me, the undersigned, a Notary
Public in and for the State of Texas, duly commissioned and sworn, personally
appeared Barbara Durham to me known to be the
Vice President of the corporation that executed the
foregoing instrument, and acknowledged the said instrument to be the free and voluntary act and deed of
said corporation, for the uses and purposes therein mentioned, and on oath stated that he/she/they
was/were authorized to execute the said instrument and that the seal affixed thereto (if any) is the
corporate seal of said corporation. In witness whereof, I have hereunto set my hand and affixed my
official seal the day and year first above written.

Notary Signature

Printed Name: Vijosa Devolli Texas
Notary Public in and for the State of
Residing at Denton Texas
My appointment expires: June 11, 2010

VIJOSA DEVOLLI
My Commission Expires
June 11, 2012
NOTARY PUBLIC
STATE OF TEXAS

Escrow No.: 6479994-E                    LPB 15-09

Unofficial Copy

Exhibit D (P. 1 of 1)

WHEN RECORDED RETURN TO:
Ali Suleiman
3435 Auburn Way South #63
Auburn, WA 98092



```
20120418001994
REHBERG LAW GR QCD          63.00
PAGE-001 OF 002
04/18/2012 15:38
KING COUNTY, WA
```

## E2539112
```
04/18/2012 15:38
KING COUNTY, WA
TAX            $10.00    PAGE-001 OF 001
SALE            $0.00
```

Recorded at the Request of: Rehberg Law Group, P.S., P. O. Box 1046, Kent, WA 98035-1046
The draftsman assumes no responsibility for the legal descriptions and stated title owner(s)
herein, which were supplied by the parties hereto.

Unofficial Copy

## QUIT CLAIM DEED

**Grantor:**

    1.   Amir Suleiman, a single person

**Grantee:**

    1.   Ali Suleiman, Trustee of the Ali Suleiman Trust dated November 25, 2003

**Legal Description:**

    1.   U. 63, Bldg. G, Winchester Heights Condo., V 34 of Condominiums, pgs 66-73

**Assessor's Property Tax Parcel Account Number: 9465500630**

Commonly Known As: 3435 Auburn Way South #63

GRANTOR, AMIR SULEIMAN, for and in consideration of Love and Affection,
convey and quit claim to ALI SULEIMAN the following described real estate, situate in the
County of King, State of Washington, together with all after acquired title of the Grantor
therein:

UNIT 63, BUILDING G, WINCHESTER HEIGHTS, A CONDOMINIUM, SURVEY MAP
AND PLANS RECORDED IN VOLUME 34 OF CONDOMINIUMS, PAGES 66
THROUGH 73, INCLUSIVE;
CONDOMINIUM DECLARATION RECORDED UNDER RECORDING NUMBER(S)
7907190725 AND AMENDMENTS THERETO, IN KING COUNTY, WASHINGTON.
TOGETHER WITH PARKING SPACE 63 (LIMITED COMMON ELEMENT).

Exhibit E (P. 1 of 2)

SUBJECT TO any rights, restrictions, reservations, easements, conditions, and covenants of record.

DATED this _16_ day of _April_, 2012.

_____
Amir Suleiman

STATE OF WASHINGTON, County of King; ss.

On this day personally appeared before me Amir Suleiman, to me known to be the individual described in and who executed the foregoing instrument, and acknowledged that it was signed as a free and voluntary act and deed for the uses and purposes therein mentioned.

GIVEN under my hand and official seal on this _16_ day of _April_, 2012.

---

PLACE NOTARY SEAL HERE

_Anne M. Lloyd_
NOTARY PUBLIC _Anne M. Lloyd_
For the State of Washington, residing in _Covington_
My appointment expires _9-29-15_

Unofficial Copy

Exhibit E (P. 2 of 2)





**2015052100 1781**
FIRST AMERICAN WD           74.00
PAGE-001 OF 003
05/21/2015 16:44
KING COUNTY, WA

**E2731636**
05/21/2015 16:39
KING COUNTY, WA
TAX          $1,019.60
SALE        $57,000.00          PAGE-001 OF 001

AFTER RECORDING MAIL TO:

Charles D. Desteunder and Jeanette S. Desteunder
25430 162nd Place SE
Covington, WA 98042

Filed for Record at Request of:
First American Title Insurance Company

*Space above this line for Recorders use only*

# STATUTORY WARRANTY DEED

File No: **4211-2449286 (AY)**                    Date: **May 19, 2015**

Grantor(s): **Ali Suleiman Trust**
Grantee(s): **Charles D. Desteunder and Jeanette S. Desteunder**
Abbreviated Legal: **Unit 63, Building G, Winchester Heights, Vol. 34, P. 66-73, King County**
Additional Legal on page:
Assessor's Tax Parcel No(s): **946550-0630-06**

---

**THE GRANTOR(S) AMIR C. SULEIMAN AND SARAH V. HOOVER, SUCCESSOR TRUSTEES OF THE ALI SULEIMAN TRUST DATED NOVEMBER 25, 2003** for and in consideration of **Ten Dollars and other Good and Valuable Consideration**, in hand paid, conveys, and warrants to **Charles D. Desteunder and Jeanette S. Desteunder, husband and wife,** the following described real estate, situated in the County of **King**, State of **Washington**.

**LEGAL DESCRIPTION:** Real property in the County of King, State of Washington, described as follows:

**Unit 63, Building G of Winchester Heights, a Condominium, according to Declaration thereof recorded under King County Recording No. 7907190725 and any amendments thereto; said Unit is located on Survey Map and Plans filed in Volume 34 of Condominiums, Page(s) 66 through 73, records of King County, Washington.**

Subject To: This conveyance is subject to covenants, conditions, restrictions and easements, if any, affecting title, which may appear in the public record, including those shown on any recorded plat or survey.

Page 1 of 3                                        LPB 10-05

Exhibit F (P. 1 of 3)

APN: **946550-0630-06**       Statutory Warranty Deed       File No.: **4211-2449286 (AY)**
- continued

Ali Suleiman Trust dated November 25, 2003

_____
Amir C. Suleiman, Successor Trustee

_____
Sarah V. Hoover, Successor Trustee

STATE OF     Washington
                      )-ss
COUNTY OF    King            )

I certify that I know or have satisfactory evidence that **Amir C. Suleiman**, <u>is</u>/are the person(s) who appeared before me, and said person(s) acknowledged that <u>he</u>/she/they signed this instrument, on oath stated that <u>he</u>/she/they is/are authorized to execute the instrument and acknowledged it as the **Successor Trustee** of **Ali Suleiman Trust dated November 25, 2003** to be the free and voluntary act of such party(ies) for the uses and purposes mentioned in this instrument.

Dated:    5/20/15               _____

Notary Public in and for the State of Washington
Residing at:   Seattle
My appointment expires:   12/9/16

```
AGNES L. YIP
NOTARY PUBLIC
STATE OF WASHINGTON
COMMISSION EXPIRES
DECEMBER 9, 2016
```

Page 2 of 3                 LPB 10-05

Exhibit F (P. 2 of 3)

APN: 946550-0630-06          Statutory Warranty Deed          File No.: 4211-2449286 (AY)
                                  - continued

STATE OF     Washington          )
                                 )-ss
COUNTY OF    King                )

I certify that I know or have satisfactory evidence that **Sarah V. Hoover**, is/are the person(s) who appeared before me, and said person(s) acknowledged that he/she/they signed this instrument, on oath stated that he/she/they is/are authorized to execute the instrument and acknowledged it as the **Successor Trustee** of **Ali Suleiman Trust dated November 25, 2003** to be the free and voluntary act of such party(ies) for the uses and purposes mentioned in this instrument.

Dated: _____5/20/15_____          _____

                                  Notary Public in and for the State of Washington
                                  Residing at: Seattle
                                  My appointment expires: 12/9/16

AGNES L. YIP
NOTARY PUBLIC
STATE OF WASHINGTON
COMMISSION EXPIRES
DECEMBER 9, 2016

                        Page 3 of 3                          LPB 10-05

**Instrument Number: 20170823000963   Document:WD Rec: $75.00 Page-Record Date:8/23/2017 3:48 PM King County, WA**

AFTER RECORDING MAIL TO:
Hong Wang and Patricia R. Mayovsky
24805 22nd Ave S
Kent, WA 98032



**20170823000963**

WARRANTY DEED      Rec: $75.00
8/23/2017 3:48 PM
KING COUNTY, WA

**E2885010**

EXCISE TAX AFFIDAVITS
8/23/2017 3:48 PM KING COUNTY, WA
Selling Price:$320,000.00
Tax Amount:$5,701.00

Filed for Record at Request of: WFG National Title Company of Washington, LLC
Escrow Number: 17-102399

### Statutory Warranty Deed

| | |
|---|---|
| Grantor(s): | Amir C. Suleiman and Sarah V. Hoover, Co-Successor Trustees of the Ali Suleiman Trust u/a dtd 11/25/2003, and successors |
| Grantee(s): | Hong Wang and Patricia R. Mayovsky, a married couple |
| Abbreviated Legal: | N/A    Lot 7, block 2, Saltair hills |
| Additional legal(s) on page: | |
| Assessor's Tax Parcel Number(s): | 7523700115 |

THE GRANTOR **Amir C. Suleiman and Sarah V. Hoover, Co-Successor Trustees of the Ali Suleiman Trust u/a dtd 11/25/2003, and successors**, for and in consideration of TEN DOLLARS AND OTHER GOOD AND VALUABLE CONSIDERATION in hand paid, conveys and warrants to **Hong Wang and Patricia R. Mayovsky, a married couple**, the following described real estate, situated in the County of King, State of Washington:

LOT 7 IN BLOCK 2 OF SALTAIR HILLS, AS PER PLAT RECORDED IN VOLUME 59 OF PLATS, PAGES 39 THROUGH 41, INCLUSIVE, RECORDS OF KING COUNTY AUDITOR;

SITUATE IN THE CITY OF KENT, COUNTY OF KING, STATE OF WASHINGTON.

GRANTOR ACKNOWLEDGES THAT TITLE TO THE PROPERTY IS MARKETABLE AT THE TIME OF THIS CONVEYANCE. THE FOLLOWING SHALL NOT CAUSE THE TITLE TO BE UNMARKETABLE: RIGHTS, RESERVATIONS, COVENANTS, CONDITIONS, AND RESTRICTIONS, PRESENTLY OF RECORD AND GENERAL TO THE AREA; EASEMENTS AND ENCROACHMENTS, NOT MATERIALLY AFFECTING THE VALUE OF OR UNDULY INTERFERING WITH GRANTEE'S REASONABLE USE OF THE PROPERTY; AND RESERVED OIL AND/OR MINING RIGHTS.

Dated: August 21, 2017

Ali Suleiman Trust u/a dtd 11/25/2003

By: _Amir O. Suleman, Co-Successor Trustee_
Amir C. Suleiman, Co-Successor Trustee

By: _Susan V. Hoover, Co-Successor Trustee_
Sarah V. Hoover, Co-Successor Trustee

WFG NAT'L TITLE
order no. 17-102399

Exhibit G (P. 1 of 2)

Unofficial Copy

10/16/2020　　　　　　　　　　Landmark Web Official Records Search

**Instrument Number: 20170823000963  Document:WD Rec: $75.00 Page-2 o**
**Record Date:8/23/2017 3:48 PM King County, WA**

STATE OF ~~WASHINGTON~~ }
　　　　　　　　　　　　　　　} SS.
County of ~~KING~~ }

I certify that I know or have satisfactory evidence that
~~AMIR C. SULEIMAN, SARAH HOOVER~~ is/are the person(s) who appeared before me,
and said person(s) acknowledged that (he/she/they) signed this instrument, on oath stated that
(he/she/they) was/are authorized to execute the instrument and acknowledged it as the
~~TRUSTEE~~ of ~~ALI SULEIMAN TRUST~~ to be the free and voluntary act
of such party(ies) for the uses and purposes mentioned in the instrument.

Dated this ~~21~~ day of August, 2017

Notary Public in and for the State of WASHINGTON
Residing at: ~~KING~~
My appointment expires: ~~12-27-2020~~

GABRIELLE JOHNSTON
Commission Expires
NOTARY
PUBLIC
12-27-2020
STATE OF WASHINGTON

Unofficial Copy

Exhibit G (P. 2 of 2)

UNITED STATES BANKRUPTCY COURT

WESTERN DISTRICT OF WASHINGTON AT TACOMA

---------------------------------------------------------

In re                        )

SARAH HOOVER,                 )

            Debtor.          ) Chapter 13

SARAH HOOVER,                 ) No. 19-42890-MJH

          Plaintiff,        ) Adversary No. 20-04002-MJH

   vs.                       )

QUALITY LOAN SERVICE          )

CORPORATION OF WASHINGTON,    )

PHH MORTGAGE CORPORATION      )

D/B/A PHH MORTGAGE SERVICES,  )

HSBC BANK USA, N.A., AS       )

TRUSTEE OF THE FIELDSTONE     )

MORTGAGE INVESTMENT TRUST,    )

SERIES 2006-2, NEWREZ, LLC,   )

AND IH6 PROPERTY WASHINGTON,  )

L.P. D/B/A INVITATION HOMES,  )

         Defendants.       )

---------------------------------------------------------

Zoom Deposition Upon Oral Examination of SARAH V. HOOVER

---------------------------------------------------------

Tuesday, August 18, 2020

REPORTED BY:  Keri A. Aspelund, RPR, CCR No. 2661

Exhibit H (P. 1 of 17)

1        Q.   Is that the first time you've ever filed

2    bankruptcy?

3        A.   Yes.

4        Q.   Why did you file bankruptcy?

5        A.   I was trying to save my house.

6        Q.   Is there any other reason you filed bankruptcy?

7        A.   It was to save my house.

8        Q.   Ms. Hoover, I have sent to your counsel -- we're

9    going to start getting into the documents now.

10            I sent to your counsel, through the court

11   reporter, 23 exhibits.

12            Do you have access to those documents?

13       A.   Yes.

14       Q.   Okay.  I'm going to ask you to turn to what

15   has -- what I'm going to mark and what is listed in here as

16   document 1, and we'll mark this as Exhibit-1.

17       A.   Okay.

18            (Exhibit-1 marked.)

19       Q.   Let me know when you're there.

20            Are you there?

21       A.   I'm trying to -- yes.

22       Q.   Okay.

23            MS. HENRY:  Got it?  Okay.

24       Q.   All right, so I'll note for the record that this

25   is being marked as Exhibit-1.  It is the Adjustable Rate

1      A.   I don't remember anything like that.

2      Q.   Okay.  And do you remember who the original

3 servicer was on this loan?

4      A.   No.

5      Q.   It wasn't Ocwen; correct?

6      A.   No.

7      Q.   And do you remember for how long you made

8 payments under this loan initially?

9      A.   No.

10     Q.   All right.  Fair to say for a number of years?

11     A.   Probably, yeah.

12     Q.   Did you have problems with payment on this loan

13 before 2018?

14     A.   With -- with us on the loan on the house?

15     Q.   Yes.

16     A.   Yes.

17     Q.   Okay.  Do you remember about how many times?

18     A.   No.

19          I know once, off the top of my head.

20     Q.   Do you remember loan modifications that had to

21 be signed in the past?

22     A.   Mm-hm.  Yeah.

23     Q.   And do you remember why those modifications

24 needed to be signed?

25          Was it because you were having difficulty with

1   payments?

2        A.   Yes.

3        Q.   And we'll get to those.

4             Do you remember if those loan modifications were

5   signed by you?

6        A.   I don't remember who signed them.

7        Q.   Okay.  Let's go to Exhibit -- well, one second.

8             I know you testified you don't remember signing

9   this note.  At any time leading up to this lawsuit, did you

10  ever review this document, note?

11       A.   No.

12       Q.   Okay.  Let's go to Exhibit-2.

13            (Exhibit-2 marked.)

14       Q.   And I'll represent to you that this is the Deed

15  of Trust in connection with the property at issue.

16            Let me know once you're there.

17       A.   I'm here.

18       Q.   Okay.  And so this -- sorry.

19       A.   I didn't say anything.  I just said I was here.

20       Q.   Okay.  So this document is -- for the record,

21  it's listed -- this is going to be Exhibit-2.  It's listed

22  Bates range Defendant 1932 through 1954.

23            And Ms. Hoover, if you turn to -- on the PDF

24  it's page 14, but on the Bates range it's Defendant 1945,

25  can you turn your attention there.

1              MR. ANDERSON:  How many more family traumas are

2     we going to go through here?  I really don't think this has

3     anything to do with the case.

4              MR. MOORE:  I'll just mention --

5              MR. ANDERSON:  Sarah, are you all right?

6              MS. HENRY:  Do you want to take a break?

7              THE WITNESS:  Yeah.  I don't like -- I don't

8     want to -- yeah, I don't like this.  I don't like talking

9     about my family like that.  I mean --

10         Q.   My final question on this is have you seen any

11    therapists since 2011?

12         A.   No.

13         Q.   Have you seen any doctors since the start of --

14    since 2019 -- have you seen any mental health professionals

15    since 2019?

16         A.   No.

17         Q.   Have you seen any regular doctors since 2019?

18         A.   Yeah.

19         Q.   With any of those regular doctors, have you

20    discussed this lawsuit?

21         A.   No.

22         Q.   With any of those regular doctors, have you gone

23    to the doctor's appointment in any way in any connection

24    relating to this lawsuit?

25         A.   I -- I don't think so.  I don't know how it

1   7.

2                    (Exhibit-7 marked.)

3        Q.    And Ms. Hoover, I'll represent to you, and take

4   a chance to look at it, but this is a Notice of Default

5   signed dated April 9th, 2018, Bates stamped Defendant --

6             MS. HENRY:  Just a second.  There's somebody at

7   our -- I have to step out for just a second.  Hold on.

8             MR. MOORE:  Okay.

9                    (Brief interruption.)

10            MS. HENRY:  Okay, I'm back.

11            MR. MOORE:  Okay.

12            MS. HENRY:  Sorry.  I'm back.

13            MR. MOORE:  Okay, no worries.

14       Q.    So, Ms. Hoover, I was saying this document is

15   Bates stamped Defendants 957 through 960, and it appears to

16   be a Notice of Default letter.

17            Have you seen this document before?

18       A.    I don't remember it exactly.

19       Q.    Okay.  Do you remember receiving a Notice of

20   Default in 2018?

21       A.    I mean, no, I don't remember seeing this

22   document.

23       Q.    Okay.  And if you see at the top, it's addressed

24   to Ali Suleiman.

25            Do you see that?

1      A.    Yeah.

2      Q.    After you received this letter, did you call

3   Ocwen and indicate that Mr. Suleiman had passed away?

4      A.    I don't remember when I notified Ocwen.

5      Q.    Okay.  And do you dispute that the loan was in

6   default as of the date of this letter?

7      A.    No.

8      Q.    And you didn't make -- do you recall making any

9   payments on the loan after receiving this letter?

10     A.    I don't remember receiving this letter, so I

11  don't know if I did.

12     Q.    I'll rephrase the question, thank you.

13           Do you remember making any payments after the

14  date of this letter on the loan?

15     A.    I don't remember what date the last payments I

16  made were.

17           MR. MOORE:  Okay.  Let's go to 18.

18           And Keri, can you help me help me out, what the

19  number for this is.

20           THE COURT REPORTER:  This will be number 8.

21           MR. MOORE:  Okay, thank you.

22              (Exhibit-8 marked.)

23     Q.    Ms. Hoover, let me know once you're there.

24     A.    I'm here.

25     Q.    Okay.  So this is a letter from Ocwen Loan

1        Q.   Okay.  And the next sentence says "We have

2   updated our records to reflect you as authorized to receive

3   and discuss information regarding the account."

4             Do you see that?

5        A.   Mm-hm.  Yes, I do.

6        Q.   Okay.  Do you know if Ocwen sent a letter like

7   this to your brother?

8        A.   I have no idea.

9        Q.   Okay.

10       A.   I don't know.

11       Q.   Okay.  I want to go now to the second part of

12  this exhibit, which is Bates Defendant 1067 through

13  Defendant 1069, and the first page of that is, it looks

14  like, a letter, and then it's a letter addressed to you.

15            Do you remember receiving this letter?

16       A.   I don't remember.

17       Q.   Okay.  Do you see this -- do you remember seeing

18  this document before you sit here today?

19       A.   I don't remember.

20       Q.   Okay.  So if you don't remember the letter, I

21  guess I probably know the answer to this question, but do

22  you ever remember if you specifically responded to this

23  letter?

24       A.   No, I don't remember.

25       Q.   Okay.

1   It says "Your temporary password will be the last 6 digits

2   of your Social Security Number."

3           Do you see that?

4   A.    Mm-hm.

5   Q.    Did you ever create a password with PHH with

6   respect to this loan?

7   A.    I don't remember doing that.

8   Q.    Okay.  Now, I think you already testified to

9   this, but just for clarification, you didn't make any

10  payments on the loan once PHH became the loan servicer; is

11  that correct?

12  A.    Correct.

13          MR. MOORE:  Let's go to 19, which I'm going to

14  mark as 12.

15              (Exhibit-12 marked.)

16          MS. HENRY:  What are you going to do now?

17          MR. MOORE:  PDF 19, which is marked -- which I'm

18  going to mark as 12.

19  Q.    Let me know once you're there, Ms. Hoover.

20  A.    I'm here.

21  Q.    Okay.  And this is a document Bates stamped

22  Defendant 1247 and dated May 23rd, 2019.

23          Have you seen this letter before?

24  A.    I don't remember.

25  Q.    Okay.  Any reason you have to think you didn't

1    receive this letter, I guess?

2         A.   What is your question?

3         Q.   Do you have any reason to believe you didn't

4    receive this letter?

5         A.   I -- I mean, no.

6              MS. HENRY:  Object, speculation.

7         A.   I don't know.

8         Q.   Okay.  This letter goes through a request that

9    Ocwen receive to complete a transfer package, and it's an

10   Additional Items Letter, and it gives two options.  It says

11   "Please forward the following items to the Assumption

12   Department:  To assume the loan in the name of the Ali

13   Suleiman Trust," and then the first bullet asks for the

14   "Recorded deed transferring title from Ali Suleiman to Ali

15   Suleiman, trustee of the Ali Suleiman Trust."

16             Do you see that?

17        A.   Mm-hm, I see that.

18        Q.   And that never -- that deed never occurred;

19   correct?

20        A.   Not that I'm aware of.

21        Q.   Okay.  And do you see that they're asking for a

22   copy of the Ali Suleiman Trust as well?

23        A.   Yes.

24        Q.   Okay.  And what's your understanding -- what is

25   your understanding as to the first time you provided Ocwen

1    with a copy of the full Ali Suleiman Trust, if you know?

2         A.   I don't know -- are you asking when?

3         Q.   Yeah.

4         A.   I don't know.

5         Q.   Okay.  Let's go to the second bullet, the second

6    option.

7              Then Ocwen says "To assume the loan

8    individually," they would require, and the first

9    requirement is a "Recorded property deed transferring title

10   from the Estate of Ali Suleiman to Sarah Hoover."

11             Do you see that?

12        A.   Yes.

13        Q.   And that never occurred; correct?

14        A.   I don't know.  That's what I was trying to do.

15        Q.   That's what you were trying to do with Ocwen?

16        A.   Yes.

17        Q.   Okay.  But my question's a little bit different.

18             You never recorded anything in the land records

19   indicating that the Ali Suleiman Trust had conveyed the

20   property to you individually; correct?

21        A.   No.

22        Q.   You mean correct?

23        A.   I mean, yes, I -- I wouldn't know how to do

24   that.

25        Q.   Did you have counsel at the time you -- in May

Exhibit H (P. 11 of 17)

1        Q.   Okay.  It was after an internet search, or how
2    did you come to that knowledge?
3        A.   I don't remember exactly.
4             MS. HENRY:  Objection to form.
5        Q.   And you said it could help; help with what?
6        A.   Saving my house.
7             MR. MOORE:  Let's go to PDF 12, which this will
8    be -- is this 13 now?
9             THE COURT REPORTER:  Yes.
10             (Exhibit-13 marked.)
11        Q.   Ms. Hoover, let me know once you're there.
12        A.   I'm here.
13        Q.   So this is a mortgage statement with the due
14    date -- looks like the statement was generated in June of
15    2019, and the due date is July 1st, 2019.
16             Do you remember receiving this document?
17        A.   I don't remember.
18        Q.   Okay.  And it's got an amount due date of
19    $26,732.42.
20             Do you see that?
21        A.   I see that.
22        Q.   Were you able to afford to pay that amount to
23    get this loan out of arrearage?
24             MS. HENRY:  Objection to form.
25        Q.   Go ahead.

Exhibit H (P. 12 of 17)

1        A.    No.

2        Q.    Okay.  When did you first learn that this loan

3   was going to a nonjudicial foreclosure sale?

4        A.    In May of 2019.

5        Q.    Okay.  And how did you learn that?

6        A.    Ocwen, I believe.

7        Q.    Pardon?

8        A.    Ocwen.

9        Q.    Did you contact either of your siblings, either

10  Amir Suleiman or Sofiah Corcoran, before the foreclosure

11  sale to tell them what was going on?

12       A.    I believe so.

13       Q.    And what did you tell them?

14       A.    That I was trying to save my house and I wasn't

15  sure how.

16       Q.    And did you contact -- and I guess the answer is

17  no, but I just want to clarify, you didn't contact any

18  attorneys up and through the foreclosure sale date,

19  correct, to seek -- to help you with any representation?

20       A.    I didn't hire anyone.

21       Q.    Did you contact anyone?

22       A.    I mean, yeah.

23       Q.    Who did you --

24       A.    Well, I tried to.

25       Q.    Who did you try and contact?

1           When you first spoke with them, did they advise

2     you to file for bankruptcy?

3           A.   No, I don't think so.

4           Q.   So what was the --

5           A.   They were going to help me with my loan

6     modification.

7           Q.   So when Elite Legal Network -- well, let me back

8     up.

9           So Elite Legal Network submitted documents on

10    your behalf in relation to the loan modification; correct?

11          MS. HENRY:  Objection to form.

12          A.   As far as I know, they did.

13          Q.   Okay.  Did you hire them in any capacity

14    relating to your bankruptcy?

15          A.   No.

16          Q.   Okay.  This document that we're looking at right

17    now, if you know, was this submitted as part of the loan

18    modification materials submitted to PHH in September of

19    2019?

20          MS. HENRY:  Objection to form.

21          Q.   If you recall?

22          A.   I did not submit it as part of a loan

23    modification form.

24          Q.   I know you didn't, I'm asking if Elite Legal

25    Network did?

1          A.    I don't know.  I don't remember exactly.  I'm

2     sure that the -- you know, when you're looking at all of

3     the options in front of you, you evaluate them all, and I

4     felt like my options were very limited at that point.

5          Q.    And just to button it up, so your testimony is

6     though that that is one of -- collecting the surplus funds

7     was one option that you considered?

8          A.    I'm sure I thought about it, but I don't

9     remember exactly.

10         Q.    Okay.  Let's go to paragraph 68, which is page

11    15 of 16.

12               Let me know when you're there.

13         A.    I'm here.

14         Q.    Okay.  This paragraph alleges that you incurred

15    significant actual damages, including travel costs to your

16    attorney's office, actual damages in the form of attorney's

17    fees.

18               And I'd like to ask you, what actual damages

19    have you incurred as a result of this lawsuit?

20               MS. HENRY:  Objection to form.

21         A.    Like total dollar amount?

22         Q.    As in --

23               MS. HENRY:  Just let me stop for a second.

24               Objection to form.  Actual damages, again, a

25    legal term that she wouldn't have any way of knowing how to

```
 1    answer.

 2              MR. MOORE:  Are you instructing her not to

 3    answer?

 4              MS. HENRY:  No, she can answer, but I'm just

 5    saying it's not appropriate to ask her for actual damages.

 6         A.   What does that mean?

 7         Q.   I didn't draft it.

 8         A.   Say that again.

 9         Q.   I didn't draft it.

10         A.   What does actual damages mean?

11         Q.   I'm asking you, what are your -- what are your

12    damages that you're claiming in this lawsuit?

13              MS. HENRY:  Objection to form.

14         Q.   Go ahead.

15         A.   Can you explain your question to me because I

16    guess I don't -- my answer is I don't know.

17         Q.   Okay.  Have you incurred attorney's fees as a

18    result of this lawsuit?

19              MS. HENRY:  Objection to form.

20         Q.   Go ahead.

21         A.   I don't know exactly how -- what my total fees

22    are.

23         Q.   It's a yes or no question, have you incurred

24    attorney's fees as a result of this lawsuit?

25              MS. HENRY:  Object to form.
```

Exhibit H (P. 16 of 17)

```
 1                        C-E-R-T-I-F-I-C-A-T-E

 2

 3     STATE OF ARIZONA     )

 4                          )  ss.

 5     COUNTY OF MARICOPA   )

 6

 7             I, the undersigned Registered Professional
       Reporter and Certified Court Reporter, hereby
 8     certify that the foregoing deposition upon oral
       examination was taken stenographically before me and
       transcribed under my direction;

 9

10             That the witness was duly sworn by me,
       pursuant to RCW 5.28.010, to testify truthfully; that the
11     transcript of the deposition is a full, true, and correct
       transcript to the best of my ability; that I am neither
12     attorney for, nor a relative or employee of, any of the
       parties to the action or any attorney or counsel employed
13     by the parties hereto, nor financially interested in its
       outcome.

14

15             I further certify that in accordance with CR
       30(e), the witness was given the opportunity to examine,
16     read, and sign the deposition, within 30 days, upon its
       completion and submission, unless waiver of signature was
17     indicated in the record.

18

19             IN WITNESS WHEREOF, I have hereunto set
       my hand this 24th day of August, 2020.

20

21

22

23     _____
       NCRA Registered Professional Reporter
24     Washington Certified Court Reporter No. 2661

25
```

1                UNITED STATES BANKRUPTCY COURT

2          WESTERN DISTRICT OF WASHINGTON AT TACOMA

3  ----------------------------------------------------------

4    In re                        )

5    SARAH HOOVER,                 )

6                    Debtor.       ) Chapter 13

7    SARAH HOOVER,                 ) No. 19-42890-MJH

8                    Plaintiff,    ) Adversary No. 20-04002-MJH

9        vs.                       )

10   QUALITY LOAN SERVICE          )

11   CORPORATION OF WASHINGTON,    )

12   PHH MORTGAGE CORPORATION      )

13   D/B/A PHH MORTGAGE SERVICES,  )

14   HSBC BANK USA, N.A., AS       )

15   TRUSTEE OF THE FIELDSTONE     )

16   MORTGAGE INVESTMENT TRUST,    )

17   SERIES 2006-2, NEWREZ, LLC,   )

18   AND IH6 PROPERTY WASHINGTON,  )

19   L.P. D/B/A INVITATION HOMES,  )

20                   Defendants.   )

21 ----------------------------------------------------------

22  Zoom Deposition Upon Oral Examination of AMIR C. SULEIMAN

23 ----------------------------------------------------------

24                   Friday, July 10, 2020

25    REPORTED BY:  Keri A. Aspelund, RPR, CCR No. 2661

1    now.

2          Can you provide for the record who your father

3    and mother are.

4          A.   My father is Ali Suleiman, my mother is Billie

5    Suleiman.

6          Q.   I'm sorry, the record broke for a second when

7    you said your mother's name.

8          Can you repeat it, please?

9          A.   Billie Suleiman.

10         Q.   How do you spell that?

11         A.   B-I-L-L-I-E S-U-L-E-I-M-A-N.

12         Q.   Okay.  And Mr. -- your father, Ali Suleiman, has

13   passed away; correct?

14         A.   That's correct.

15         Q.   Okay.  When did he pass away?

16         A.   It was the end of February of 2015.

17         Q.   Okay.  And where did he reside at the time he

18   passed away?

19         A.   In Palembang, Indonesia.

20         Q.   And how long did he live in Indonesia?

21         A.   Well, he would travel.  I don't know exactly

22   when he started.  I think maybe around 2004ish or so.

23         Q.   And from 2004 until the time of his death, did

24   he ever reside in the United States?

25         A.   Yeah, yeah.  I mean, he would spend time there,

1       let me strike that actually.

2              Did he own the property in Kent, Washington?

3       A.    Yes.

4       Q.    Okay.  And do you know when he acquired that

5       property?

6       A.    Maybe around 2000, 2001.  I'm not sure.

7       Q.    Okay.  And is that property still in Mr.

8       Suleiman's name?

9       A.    No.

10      Q.    What happened to that property?

11      A.    That property's been sold.

12      Q.    Okay.  When was it sold?

13      A.    August of 2017.

14      Q.    Okay.  And how much did it sell for?

15      A.    I don't know.

16      Q.    Were you involved with the -- with the selling

17      of that property?

18      A.    Yes.  My involvement was cleaning up the

19      property, and you know, fixing it up, and getting it ready

20      for sale.

21      Q.    Was there any other involvement you had with

22      respect to selling that property?

23      A.    I mean, I spoke to the agent a few times.

24      Q.    So you're unaware of the amount that property

25      sold for?

1       A.   I can't recall.

2       Q.   And where did the money go from that property

3 sale?

4       A.   It went to me and my sisters.

5       Q.   Equally?

6       A.   Yes.

7       Q.   Okay.  And do you recall about how much each of

8 you received?

9       A.   I'd say roughly 30,000.

10      Q.   And how many sisters do you have?

11      A.   Two.

12      Q.   And what are their names?

13      A.   Sarah Hoover, Sofiah Corcoran.

14      Q.   Where does Sofiah Corcoran reside?

15      A.   Bartow, Florida.

16      Q.   How do you spell that first name?

17      A.   S-O-F-I-A-H.

18      Q.   I'm sorry, the first name of the town in

19 Florida?

20      A.   Oh, B-A-R-T-O-W.

21      Q.   Okay, thank you.

22          And where does Mrs. Hoover -- where does Sarah

23 Hoover reside?

24      A.   Bonney Lake, Washington.

25      Q.   Okay.  At the property at dispute -- or in

1       Q.   It wasn't sold to someone -- was it sold to

2  someone in the Suleiman family?

3       A.   No.

4       Q.   Okay.  And what happened with the money that was

5  received from that property sale, from the property in

6  Auburn?

7       A.   It was split between me and my sisters.

8       Q.   Okay.  And do you remember how much each of you

9  received, approximately?

10      A.   Approximately 15,000.

11      Q.   Okay.  And I remember you said the Kent property

12  was sold in 2017; do you know when the Auburn property was

13  sold?

14      A.   I don't recall.

15      Q.   Okay.  Do you remember if it was sold before or

16  after the Kent property?

17      A.   (Inaudible.)

18             (Reporter requested clarification.)

19             THE WITNESS:  You keep freezing.

20             MR. MOORE:  Yeah, I think we've got an internet

21  connection issue.

22      Q.   Can you repeat your answer, Mr. Suleiman.

23      A.   I'm -- well, I said you keep freezing.

24      Q.   Okay.  So my question was, do you remember if

25  the Auburn property was sold before the Kent property?

1          A.    No.

2          Q.    Okay.  And the Kent property, who resided there?

3          A.    I was residing there.

4          Q.    Okay.  And were you residing at the Kent

5     property when it was sold?

6          A.    I was.

7          Q.    Okay.  And approximately how long had you

8     resided at that property?

9          A.    From December of 2005 until August 2017.

10         Q.    And was there a mortgage on the property?

11         A.    Yes.

12         Q.    And do you know who was the borrower under that

13    mortgage?

14         A.    It was my father.

15         Q.    Okay.  And who made the mortgage payments on the

16    Kent property?

17         A.    Up until the time of his death, he did.

18         Q.    Okay.  Do you know if the Kent property was

19    conveyed to the Ali Suleiman Trust before your father

20    passed away?

21         A.    The purpose of the trust was exactly for his

22    property, so yes.

23         Q.    Let me -- let me ask that question differently.

24              Do you know if there was a written document that

25    conveyed the Kent property to the Ali Suleiman Trust before

```
 1
                    C-E-R-T-I-F-I-C-A-T-E
 2
 3      STATE OF WASHINGTON )
 4                         )  ss.
 5      COUNTY OF THURSTON  )
 6
                I, the undersigned Registered Professional
 7      Reporter and Certified Court Reporter, hereby
        certify that the foregoing deposition upon oral
 8      examination was taken stenographically before me and
        transcribed under my direction;
 9
10              That the witness was duly sworn by me,
        pursuant to RCW 5.28.010, to testify truthfully; that the
11      transcript of the deposition is a full, true, and correct
        transcript to the best of my ability; that I am neither
12      attorney for, nor a relative or employee of, any of the
        parties to the action or any attorney or counsel employed
13      by the parties hereto, nor financially interested in its
        outcome.
14
15              I further certify that in accordance with CR
        30(e), the witness was given the opportunity to examine,
16      read, and sign the deposition, within 30 days, upon its
        completion and submission, unless waiver of signature was
17      indicated in the record.
18
                IN WITNESS WHEREOF, I have hereunto set
19      my hand this 22nd day of July, 2020.
20
21
22
23
        NCRA Registered Professional Reporter
24      Washington Certified Court Reporter No. 2661
25
```