# EXHIBIT L

UNITED STATES BANKRUPTCY COURT

WESTERN DISTRICT OF WASHINGTON - TACOMA

------------------------------------------------------------

| | |
|---|---|
| SARAH HOOVER, ) | |
|       Debtor. ) | BK No. 19-42890-MJH |
| ---------------------------) | Adv. No. 20-04002-MJH |
| SARAH HOOVER, ) | |
|       Plaintiff, ) | |
|    vs. ) | |
| QUALITY LOAN SERVICE ) | |
| CORPORATION OF WASHINGTON, ) | |
| et al., ) | |
|       Defendants. ) | |

------------------------------------------------------------

DEPOSITION UPON ORAL EXAMINATION

OF

QUALITY LOAN SERVICE CORPORATION OF WASHINGTON

DESIGNEE: JEFF STENMAN

------------------------------------------------------------

10:00 a.m.

July 7, 2020

787 Maynard Ave. S., Suite 201

Seattle, Washington

REPORTED BY: Lauren G. Harty, RPR, CCR #2674

1                    A P P E A R A N C E S
2
3    FOR DEBTOR/PLAINTIFF:
4                         MS. CHRISTINA L. HENRY
5                         Henry & DeGraaff
6                         787 Maynard Avenue South
7                         Seattle, Washington 98104-2987
8                         206.330.0595
9                         chenry@HDM-legal.com
10   FOR DEFENDANT QUALITY LOAN SERVICE CORPORATION OF
11   WASHINGTON:          MR. JOSEPH WARD McINTOSH
12                        McCarthy & Holthus
13                        108 1st Ave. S., Ste. 300
14                        Seattle, Washington 98104-2104
15                        206.596.4970
16                        jmcintosh@mccarthyholthus.com
17   FOR DEFENDANT PHH MORTGAGE CORPORATION, HSBC BANK USA,
     NA, as TRUSTEE of the FIELDSTONE MORTGAGE INVESTMENT
18   TRUST, SERIES 2006-2 and NEWREZ, LLC:
19                        MR. RYAN S. MOORE (Telephonically)
20                        Houser
21                        600 University Street, Suite 1708
22                        Seattle, Washington 98101
23                        206.596.7838
24                        rmoore@houser-law.com
25

```
 1                  A P P E A R A N C E S
 2                        (Continued)
 3
 4   FOR DEFENDANT IH6 PROPERTY WASHINGTON, LP dba
 5   INVITATION HOMES:
 6                    MR. JOHN ANTHONY McINTOSH
 7                    (Telephonically)
 8                    Schweet Linde & Coulson
 9                    575 S. Michigan Street
10                    Seattle, Washington 98108-3316
11                    206.275.1010
12                    johnm@schweetlaw.com
13
14
15
16
17
18
19
20
21
22
23
24
25
```

```
 1                    E X A M I N A T I O N
 2   ATTORNEY                                                     PAGE
 3   BY MS. HENRY:                                                   6
 4   BY MR. JOE McINTOSH:                                           97
 5   BY MR. JOHN McINTOSH:                                         102
 6                     E X H I B I T   I N D E X
 7   EX#                     DESCRIPTION                          PAGE
 8    1   5/15/2020 "NOTICE OF DEPOSITION OF                         7
 9        QUALITY LOAN SERVICE CORP OF WASHINGTON."
10    2   6/8/2020 "QUALITY LOAN SERVICE CORP. OF                    7
11        WASHINGTON'S RESPONSE TO PLAINTIFF'S
12        FIRST SET OF INTERROGATORIES AND REQUESTS
13        FOR PRODUCTION."
14    3   Comments, QWA000001-24.                                   17
15    4   Research results, QWA002219.                              32
16    5   Public Records - Search Results,                          35
17        QWA002221-2225.
18    6   Person Search, QWA002228.                                 35
19    7   Lexis search results, QWA002229.                          35
20    8   LexisNexis search results,                                35
21        QWA002205-2206.
22    9   LexisNexis CourtLink - Docket Number                      36
23        Search Result, QWA001715-1716.
24   10   9/17/2019 letter to IH6 Property                          65
25        Washington L.P. from QLS, QWA001649-1652.
```

```
 1                    E X H I B I T   I N D E X
 2     EX#                    DESCRIPTION                      PAGE
 3     11   Email thread ending 12/2/2019 from Robert           72
 4          McDonald to Michael Lappano,
 5          QWA001807-1815.
 6     12   QLS Log of Withheld Communications.                 75
 7     13   12/30/2019 "DECLARATION OF JEFF STENMAN."           80
 8
 9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
```

1    interested party so that they don't get full borrower
2    notices.
3         Q.    And you refer to them as borrowers?
4         A.    They are entered into the system as a
5    borrower so that they get the mailings that a borrower
6    would get.  If they're entered into an interested
7    part -- as an interested party, they would only get
8    those notices that interested parties get.  An example
9    would be a borrower would get an NOD.  An interested
10   party would not.  An interested party would get the
11   notice of sale, but the borrower would get the notice
12   of sale and the notice of foreclosure.
13        Q.    Okay.
14              So what other purposes do you use the report
15   for?
16        A.    This is only used for the deceased
17   borrower's search.
18        Q.    And once you have the deceased borrower's
19   research social security numbers, what do you use them
20   for?
21        A.    So if they're entered as a party that's been
22   confirmed of a spouse -- a parent, spouse, or child,
23   then we do want to run the social security under --
24   for bankruptcy and SCRA military searches and --
25   because if we get a bankruptcy hit or a military

```
 1   search hit, we want to review it.
 2        Q.   Okay.
 3             So -- and were searches done in this case
 4   under Ms. Hoover's social security number?
 5        A.   On -- from the social security number and
 6   results, yes.
 7        Q.   And -- what -- what do you mean by that?
 8   I'm sorry?
 9        A.   For the number that I entered in those
10   results, yes, they were done -- there were searches
11   done --
12        Q.   And --
13        A.   -- yes.
14        Q.   -- you used what number?
15        A.   Well, it's redacted, so I don't know the
16   full number.
17        Q.   But you used the number on the front page of
18   this report?
19        A.   Yes, ma'am.
20        Q.   And did you look through the other documents
21   to see -- do you ever run the second social security
22   number?
23        A.   I did not review those documents.
24        Q.   And -- why not?
25        A.   At the time that I entered the research
```

1   talking about your comment notes?
2       A.   Yeah, because I have -- I think it's in
3   there.
4       Q.   So why don't I have you look at Exhibit 3,
5   which are the comments notes, to refresh your memory.
6       A.   September 24th, 2019.
7       Q.   Okay.
8            And who informed you about the bankruptcy
9   filing?
10      A.   David Miller with Elite Legal Network.
11      Q.   Were you ever informed by any other party
12  about her bankruptcy filing?
13      A.   Prior to that date?  No.
14      Q.   What about after that date?
15      A.   For QLS?  I -- there was a subsequent call
16  regarding a -- well, I'll just walk through it.  So
17  the bankruptcy department that we sent the bankruptcy
18  filing to reviewed it.  We received a -- on the 25th
19  our reception received a call from a third party
20  regarding the -- well, that's not bankruptcy.
21           Oh.  David Miller called us again on the
22  25th, September 25th.  Sarah Hoover called us on
23  October 3rd.
24      Q.   Okay.
25      A.   I think that's it.

```
 1      A.    No.
 2      Q.    Were there any other parties that
 3   communicated with the third-party purchaser besides
 4   Mr. McDonald?  At --
 5      A.    Not --
 6      Q.    -- QLS.
 7      A.    -- that I'm -- not that I'm aware of.
 8      Q.    Okay.
 9      A.    Well -- I would supplement that.  When you
10   say communicated, we would send them the deed as part
11   of our process --
12      Q.    Okay.
13      A.    -- and that's communication, but not
14   regarding this issue.
15      Q.    Okay.
16            And --
17            MS. HENRY:  Now what exhibit are we on now?
18            THE REPORTER:  10.
19            MS. HENRY:  No. 10.
20                 (Marked Deposition Exhibit No. 10.)
21      Q.    (By Ms. Henry)  Can you tell me what is
22   Exhibit 10.
23      A.    It's the cover letter to us sending the
24   unrecorded trustee's deed to the third-party
25   purchaser.
```

```
 1      Q.    Okay.
 2            And you -- can you tell me what is the date
 3  of that letter?
 4      A.    September 17.
 5      Q.    And can you tell me -- do you recall the
 6  date of the trustee -- nontraditional trustee sale?
 7      A.    I have to look at the document here.  It's
 8  in here.
 9      Q.    Here it is.
10      A.    September 13th.
11      Q.    And on September -- September 13th this
12  property was purchased by a third party, correct?
13      A.    Yes.
14      Q.    Okay.
15            And -- and the third-party purchaser is
16  IH6 Property Washington, LP, correct?
17      A.    Yes.
18      Q.    And have you communicated with anybody at
19  IH6 outside of this letter communication?
20      A.    Our in-house counsel may have.
21      Q.    Okay.
22            And this trustee's deed was sent or this
23  cover letter four days after the sale.  Can you tell
24  me why it was sent four days after the sale.
25      A.    When the proceeds are received from the sale
```

 1    Q.    Right there.
 2    A.    Right here?
 3    Q.    Yep.  No. 13.
 4          So I'm going to take you to Exhibit -- or
 5    page three of that declaration, paragraph 10.
 6    A.    Yes.
 7    Q.    You said Quality did not have knowledge or
 8    notice of the bankruptcy at the time of the sale,
 9    correct?
10    A.    Correct.
11    Q.    You also said that on September 17th you
12    delivered to a third-party purchaser, IH6, the
13    trustee's deed, correct?
14    A.    Correct.
15    Q.    And then number 12., you said you were
16    notified for the first time on September 24th after
17    the trustee's deed had already been issued of Sarah
18    Hoover's bankruptcy, correct?
19    A.    Yes.
20    Q.    So looking at this communication and your
21    comment notes, did QLS make any -- notify PHH --
22    QLS -- I mean PHH, IH6, or the Bankruptcy Court upon
23    learning of her bankruptcy on September 24th?
24    A.    I don't -- I don't recall.  I don't think we
25    did.  I --

1    Q.    Well --

2    A.    -- don't recall.

3    Q.    -- is there anywhere else you would look?

4    A.    I'd have to go -- I'd have to look in the LPS to see if we did anything with it. I don't think we did, but I'd -- I'd have to look to verify --

7    Q.    And is there --

8    A.    -- as far as notification to -- to PHH.

9    Q.    And you're looking at Exhibit 3, which you've testified about before. You said this had all the important information from LPS in it, correct?

12    A.    Yeah. That would be communication between us -- most likely it would be communication from them to us.

15    Q.    And what about communications from you to them?

17    A.    Well, if there aren't any, then we wouldn't have put them in here, but --

19    Q.    So is the --

20    A.    If --

21    Q.    -- absence --

22    A.    -- you understand LPS, when you're in and there's a template, you've already reported the sales report, that's the end of the template. So there's really no more communication after that unless

1  something comes up.  If -- my rec -- it's my
2  recollection that we looked at the bankruptcy,
3  couldn't confirm her interest in the property, and
4  came to the conclusion that the bankruptcy didn't
5  apply.  I don't think I would notify PHH of a
6  bankruptcy that didn't apply.  That's my recollection.
7       Q.   So your recollection is that you didn't give
8  them any information about the bankruptcy?
9       A.   My recollection is that at the time that we
10 learned of it I don't believe we notified PHH of the
11 bankruptcy.
12      Q.   Okay.
13           And is there a way that you can confirm or,
14 as your counsel stated, have you supplied --
15      A.   I'd have to look in --
16      Q.   -- all the information?
17      A.   I'd have to look in the LPS notes to see if
18 anything else was launched.  I don't -- I don't recall
19 that there was anything launched, but I'd still have
20 to check those notes.
21      Q.   And is there a reason --
22      A.   That's not in our system.
23      Q.   Is there a reason why a note like that would
24 not be in the comment notes?
25      A.   No.  I don't think there would be a reason

 1     MR. JOSEPH McINTOSH:  And it's Exhibit 13.
 2  A.   Yes.  Page 13.
 3     MR. JOHN McINTOSH:  All right.  That's all I
 4  have.  Thank you.
 5     MS. HENRY:  I have --
 6     MR. JOSEPH McINTOSH:  All right.
 7     MS. HENRY:  -- nothing else.
 8     MR. JOSEPH McINTOSH:  We're done.
 9           (Deposition recessed at 12:06 p.m.)
10           (Signature reserved.)

1                    S I G N A T U R E

2

3         I declare under penalty of perjury under the

4    laws of the State of Washington that I have read my

5    within deposition, and the same is true and accurate,

6    save and except for changes and/or corrections, if

7    any, as indicated by me on the CHANGE SHEET flyleaf

8    page hereof.

9           Signed in _____, Washington, this

10   _____ day of _____, 2020.

11

12

13                  _____

14                  DESIGNEE:   JEFF STENMAN

15                  Taken:   July 7, 2020

16

17

18

19

20

21

22

23

24   Re:  In re:  Sarah Hoover
     Cause No.:  19-42890-MJH, 20-04002-MJH
25   Lauren G. Harty, RPR, CCR #2674

1                    C E R T I F I C A T E

2    STATE OF WASHINGTON     )
                             ) ss.
3    COUNTY OF KING          )

4           I, the undersigned Washington Certified Court

5    Reporter, hereby certify that the foregoing deposition

6    upon oral examination of DESIGNEE:  JEFF STENMAN was

7    taken before me on July 7, 2020, and transcribed under

8    my direction;

9           That the witness was duly sworn by me pursuant

10   to RCW 5.28.010 to testify truthfully; that the

11   transcript of the deposition is a full, true, and

12   correct transcript to the best of my ability; that I

13   am neither attorney for nor a relative or employee of

14   any of the parties to the action or any attorney or

15   counsel employed by the parties hereto, nor am I

16   financially interested in its outcome;

17          I further certify that in accordance with

18   CR 30(e), the witness was given the opportunity to

19   examine, read, and sign the deposition within 30 days

20   upon its completion and submission, unless waiver of

21   signature was indicated in the record.

22          IN WITNESS WHEREOF, I have hereunto set my hand

23   this 20th day of July, 2020.

24                            _____

25                            LAUREN G. HARTY, CCR #2674