Judge Mary Jo Heston
Chapter 13
Location: Tacoma
Hearing Date: November 20, 2020
Hearing Time: 9:00 a.m.

UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF WASHINGTON AT TACOMA

| | |
|---|---|
| IN RE:<br><br>SARAH HOOVER,<br><br>Debtor, | BK Case No. 19-42890-MJH<br><br>Adversary Case No. 20-04002-MJH<br><br>**DECLARATION OF JOHN MCINTOSH IN SUPPORT OF IH6 PROPERTY'S REPLY** |
| SARAH HOOVER,<br><br>Plaintiff,<br><br>v.<br><br>QUALITY LOAN SERVICE CORP. OF WASHINGTON, et. al.,<br><br>Defendants. | |

I, John McIntosh, declare as follows:

1. I am one of the attorneys for IH6 Property Washington, L.P. ("IH6 Property"). I am of legal age and competent to testify. I have personal knowledge of the statements made in this declaration.

2. Attached hereto as Exhibit A are relevant portions of the transcript of Sarah Hoover's deposition.

I declare under the penalty of perjury that the foregoing is true and correct.

DECLARARATION OF MCINTOSH IN SUPPORT OF
IH6 PROPERTY'S REPLY  - 1

SCHWEET LINDE & COULSON, PLLC
575 S. MICHIGAN ST.
SEATTLE, WA 98108
P (206) 275-1010  F (206) 381-0101

Case 20-04002-MJH    Doc 77-1    Filed 11/17/20    Ent. 11/17/20 20:17:58    Pg. 1 of 7

Dated: November 17, 2020.

/s/*John A. McIntosh*
John A. McIntosh, WSBA 43113

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

DECLARARATION OF MCINTOSH IN SUPPORT OF
IH6 PROPERTY'S REPLY - 2

*SCHWEET LINDE & COULSON, PLLC*
575 S. MICHIGAN ST.
SEATTLE, WA 98108
P (206) 275-1010 F (206) 381-0101

Case 20-04002-MJH    Doc 77-1    Filed 11/17/20    Ent. 11/17/20 20:17:58    Pg. 2 of 7

UNITED STATES BANKRUPTCY COURT

WESTERN DISTRICT OF WASHINGTON AT TACOMA

------------------------------------------------------------

| | |
|---|---|
| In re | ) |
| SARAH HOOVER, | ) |
| Debtor. | ) Chapter 13 |
| SARAH HOOVER, | ) No. 19-42890-MJH |
| Plaintiff, | ) Adversary No. 20-04002-MJH |
| vs. | ) |
| QUALITY LOAN SERVICE | ) |
| CORPORATION OF WASHINGTON, | ) |
| PHH MORTGAGE CORPORATION | ) |
| D/B/A PHH MORTGAGE SERVICES, | ) |
| HSBC BANK USA, N.A., AS | ) |
| TRUSTEE OF THE FIELDSTONE | ) |
| MORTGAGE INVESTMENT TRUST, | ) |
| SERIES 2006-2, NEWREZ, LLC, | ) |
| AND IH6 PROPERTY WASHINGTON, | ) |
| L.P. D/B/A INVITATION HOMES, | ) |
| Defendants. | ) |

------------------------------------------------------------

Zoom Deposition Upon Oral Examination of SARAH V. HOOVER

------------------------------------------------------------

Tuesday, August 18, 2020

REPORTED BY: Keri A. Aspelund, RPR, CCR No. 2661

1    confirm this, that there was a tax return filed for the
2    trust in 2015, and were there -- was there a tax return
3    filed for 2016, '17, '18, '19, or '20?
4         A.   No.
5         Q.   So the only tax return that's been filed for the
6    trust is for the year of 2015?
7         A.   Yes.
8         Q.   Is it true the trust sold property in 2016?
9         A.   I'm not sure when it was, but the trust did sell
10   property.
11        Q.   Did the trust have any other property, other
12   than the three pieces of real estate?
13        A.   No.
14        Q.   Were there proceeds from the Edward Jones fund
15   that were supposed to be transferred to the trust?
16        A.   Not -- no.
17        Q.   Does the trust maintain a separate bank account?
18        A.   Yes.
19        Q.   Why?
20        A.   It was advised to me to do -- to do that.
21        Q.   Who advised you?
22        A.   The attorney that drafted the trust, I believe.
23        Q.   Bank account with BECU?
24        A.   Yes.
25        Q.   Is it in your name?

1         A.    I believe it's in the trust's name.
2         Q.    Does Amir Suleiman have access to the trust --
3    to that bank account?
4         A.    Yes.
5         Q.    What did the bank account get used for?
6         A.    It was used to pay any expenses and to receive
7    any monies from the sale of properties.
8         Q.    So you would sell the properties, the two
9    properties that were sold, the proceeds that were entitled
10   to the seller of the trust would get disbursed to the trust
11   bank account, and from there you would disburse them to
12   your siblings and you?
13        A.    Yes.
14        Q.    And this was you controlling this?
15              MS. HENRY:  Objection to form.
16              MR. JOHN McINTOSH:  You can elaborate on that
17   objection, Christina.
18              MS. HENRY:  Well, we know that there's two
19   co-trustees.  You're putting words in her mouth, so I'm
20   objecting to form.  She didn't do anything by herself.  As
21   part of this trust, she's testified that Ali Suleiman is
22   part of the bank account.  So to the extent that you're
23   confusing her, I'm objecting to form.
24              MR. JOHN McINTOSH:  I don't recall ever hearing
25   that Ali Suleiman was part of the bank account.

1      Q.   Did it say that as soon as practicable after Ali
2   Suleiman's death, that the trustee shall transfer the
3   property to you?
4           MS. HENRY:  Objection to form.  You're
5   testifying about a document that speaks for itself.
6      Q.   Go ahead and answer.
7      A.   I mean, the process of how to do this I've
8   always thought was done when you sign all that paperwork,
9   when you file -- when you buy a house, and you sign all
10  those papers, so if there is another process to do that,
11  I'm unaware of it.
12     Q.   Did you ever discuss deeding the property from
13  the trust to you with an attorney or an accountant?
14     A.   Did I ever discuss deeding the property -- say
15  it again -- from --
16     Q.   The trust to you with an attorney or an
17  accountant?
18     A.   I can't remember.
19     Q.   Did you ever discuss the property in any way
20  with Jerry Gintz?
21     A.   I don't think so.
22     Q.   Is it your understanding that under the trust
23  agreement, you, as one of the co-trustees, were permitted
24  to leave the property in the trust?
25     A.   It was my understanding that there was no time

```
 1    frame when that had to be transferred.
 2         Q.   Have you used any trust proceeds to pay the loan
 3    that is the subject of this litigation?
 4         A.   Have -- I used the money that I inherited, my --
 5    what I got.
 6         Q.   Did you make payments on the loan from the trust
 7    bank account?
 8         A.   No.
 9         Q.   How would it work?
10         A.   I made payments from my account.
11         Q.   So you would disburse the real property sale
12    proceeds that you received from the sales of the trust
13    property to you personally and then to the -- to PHH or
14    Ocwen?
15              MS. HENRY:  Objection to form.  That's not what
16    her testimony was.
17         A.   I -- the money was disbursed equally between me
18    and my living siblings, and what we each did with the money
19    was what we each did with the money, and what I used the
20    money for, I used it -- part of it was to pay.
21         Q.   And there were no other trust assets, other than
22    the three pieces of real property?
23              MS. HENRY:  Objection to form.  She's testified
24    about Edward Jones; don't confuse her.
25              MR. JOHN McINTOSH:  Well, the confusion is
```