1
2
3
4
5
6

UNITED STATES BANKRUPTCY COURT

WESTERN DISTRICT OF WASHINGTON AT TACOMA

7
8
9
10
11
12

In re

SARAH HOOVER,

       Debtor.

---

SARAH HOOVER,

       Plaintiff,

  vs.

QUALITY LOAN SERVICE
CORPORATION OF WASHINGTON,
PHH MORTGAGE CORPORATION
D/B/A PHH MORTGAGE SERVICES,
HSBC BANK USA, N.A., AS
TRUSTEE OF THE FIELDSTONE
MORTGAGE INVESTMENT TRUST,
SERIES 2006-2, NEWREZ, LLC, AND
IH6 PROPERTY WASHINGTON, L.P.
D/B/A INVITATION HOMES

       Defendants.

Chapter 13

Case No.: 19-42890-MJH

Adversary No.: 20-04002-MJH

**DEFENDANTS' NOTICE OF
APPEAL AND STATEMENT OF
ELECTION**

13
14
15
16
17
18
19
20
21
22
23

24 / /

25 / /

26

NOTICE OF APPEAL AND STATEMENT OF ELECTION
AP No. 20-04002-MJH
Page 1

HOUSER LLP
600 University St., Ste. 1708
Seattle, WA 98101
PH: (206) 596-7838
FAX: (206) 596-7839

Case 20-04002-MJH   Doc 89   Filed 02/26/21   Ent. 02/26/21 19:26:29   Pg. 1 of 40

**Part 1: Identify the appellant(s)**

    1. Name(s) of appellants: PHH Mortgage Corporation D/B/A PHH Mortgage Services, NewRez, LLC, and HSBC Bank USA, N.A., as Trustee of the Fieldstone Mortgage Investment Trust, Series 2006-2

    2. Position of appellant(s) in the adversary proceeding or bankruptcy case that is the subject of this appeal:

| For appeals in an adversary proceeding. | For appeals in a bankruptcy case and not in an adversary proceeding. |
|---|---|
| ☐ Plaintiff | ☐ Debtor |
| ☒ Defendant | ☐ Creditor |
| ☐ Other (describe) | ☐ Trustee |
| _____ | ☐ Other (describe) |
| | _____ |

**Part 2: Identify the subject of this appeal**

    1. Describe the judgment, order, or decree appealed from: Memorandum Decision on Cross-Motions for Summary Judgment (Doc. 81) and Order on Cross-Motions for Summary Judgment (Doc. 82)

    2. State the date on which the judgment, order, or decree was entered: February 8, 2021. The Bankruptcy Court granted an extension of time to appeal to February 26, 2021, pursuant to FRBP 8002(d).

A copy of the Memorandum Decision and Order appealed from is attached hereto.

**Part 3: Identify the other parties to the appeal**

List the names of all parties to the judgment, order, or decree appealed from and the names, addresses, and telephone numbers of their attorneys:

    Party:      Sarah Hoover (Plaintiff/Debtor)

    Attorneys:   Christina L. Henry              Jason D. Anderson
                  Henry & Degraaff, P.S.          Anderson Santiago, PLLC
                  787 Maynard Ave S., Suite B   787 Maynard Ave S., Suite B
                  Seattle, WA 98104            Seattle, WA 98104
                  Telephone: (206) 330-0595    Telephone: (206) 395-2665
                  Facsimile: (206) 400-7609    Facsimile: N/A
                  chenry@hdm-legal.com       Jason@alkc.net

NOTICE OF APPEAL AND STATEMENT OF ELECTION
AP No. 20-04002-MJH
Page 2

HOUSER LLP
600 University St., Ste. 1708
Seattle, WA 98101
PH: (206) 596-7838
FAX: (206) 596-7839

Case 20-04002-MJH    Doc 89    Filed 02/26/21    Ent. 02/26/21 19:26:29    Pg. 2 of 40

| | |
|---|---|
| Party: | Quality Loan Service Corporation of Washington |
| Attorney: | Joseph W. McIntosh<br>McCarthy & Holthus, LLP<br>108 1st Ave South, Suite 300<br>Seattle, WA 98104<br>Telephone: (206) 596-4842<br>Facsimile: N/A<br>jmcintosh@mccarthyholthus.com |
| Party: | IH6 Property Washington, L.P. |
| Attorney: | John A. McIntosh<br>Schweet Linde & Coulson, PLLC<br>575 S. Michigan St.<br>Seattle, WA 98108<br>Telephone: (206) 381-0118<br>Facsimile: N/A<br>johnm@schweetlaw.com |
| Party: | PHH Mortgage Corporation D/B/A PHH Mortgage Services, NewRez, LLC, and HSBC Bank USA, N.A., as Trustee of the Fieldstone Mortgage Investment Trust, Series 2006-2 (Appellants) |
| Attorney: | Emilie K. Edling<br>Robert W. Norman, Jr.<br>Houser LLP<br>9600 SW Oak St, Suite 570<br>Portland, OR 97223<br>Telephone: (503) 914-1382<br>Facsimile: (949) 679-1112 |

**Part 4: Optional election to have appeal heard by District Court (applicable only in certain districts)**

If a Bankruptcy Appellate Panel is available in this judicial district, the Bankruptcy Appellate Panel will hear this appeal unless, pursuant to 28 U.S.C. § 168(c)(1), a party elects to have the appeal heard by the United States District Court. If an appellant filing this notice wishes to have the appeal heard by the United States District Court, check below. Do not check the box if the appellant wishes the Bankruptcy Appellate Panel to hear the appeal.

☑ Appellant elects to have the appeal heard by the United States District Court rather than by the Bankruptcy Appellate Panel.

NOTICE OF APPEAL AND STATEMENT OF ELECTION
AP No. 20-04002-MJH
Page 3

HOUSER LLP
600 University St., Ste. 1708
Seattle, WA 98101
PH: (206) 596-7838
FAX: (206) 596-7839

Case 20-04002-MJH    Doc 89    Filed 02/26/21    Ent. 02/26/21 19:26:29    Pg. 3 of 40

**Part 5: Sign below**

*/s/ Emilie K. Edling*                                    Date: February 26, 2021
Signature of attorney for appellant(s)(or
appellant(s) if not represented by an attorney


Name, address, and telephone number of
attorney (or appellant(s) if not represented by
an attorney):

Emilie K. Edling WSBA No. 45042
eedling@houser-law.com
Robert W. Norman, Jr. WSBA No. 37094
bnorman@houser-law.com HOUSER LLP
600 University St., Ste. 1708
Seattle, WA 98101
PH: (206) 596-7838
FAX: (206) 596-7839


Fee waiver notice: If appellant is a child support creditor or its representative and appellant
has filed the form specified in § 304(g) of the Bankruptcy Reform Act of 1994, no fee is
required.

NOTICE OF APPEAL AND STATEMENT OF ELECTION                     HOUSER LLP
AP No. 20-04002-MJH                                       600 University St., Ste. 1708
Page 4                                                          Seattle, WA 98101
                                                              PH: (206) 596-7838
                                                             FAX: (206) 596-7839

Case 20-04002-MJH     Doc 89     Filed 02/26/21     Ent. 02/26/21 19:26:29     Pg. 4 of 40

**Below is a Memorandum Decision of the Court.**

_Mary Jo Heston_
**Mary Jo Heston**
**U.S. Bankruptcy Judge**

**(Dated as of Entered on Docket date above)**

1
2
3
4
5
6
7

**UNITED STATES BANKRUPTCY COURT**
**WESTERN DISTRICT OF WASHINGTON AT TACOMA**

| | |
|---|---|
| In re: | Bk. No. 19-42890 |
| SARAH HOOVER, | |
| Debtor. | |
| SARAH HOOVER, | Adversary No. 20-04002 |
| Plaintiff, | |
| v. | **MEMORANDUM DECISON ON CROSS-MOTIONS FOR SUMMARY JUDGMENT** |
| QUALITY LOAN SERVICE CORPORATION OF WASHINGTON; PHH MORTGAGE CORPORATION D/B/A PHH MORTGAGE SERVICES; HSBC BANK USA, N.A., AS TRUSTEE OF THE FIELDSTONE MORTGAGE INVESTMENT TRUST, SERIES 2006-2; NEWREZ, LLC; AND IH6 PROPERTY WASHINGTON, L.P. D/B/A INVITATION HOMES, | |
| Defendants. | |

## I. INTRODUCTION.

This adversary proceeding and the pending motions for summary judgment (collectively the "MSJs") involve the impact of the automatic stay on the post-bankruptcy

MEMORANDUM DECISON ON CROSS-MOTIONS FOR SUMMARY JUDGMENT - 1

foreclosure sale of the Plaintiff's, Ms. Sarah Hoover ("Ms. Hoover"), family residence located at 18205 106th Street East, Bonney Lake, Washington (the "Bonney Lake Property"), and whether each defendant is liable for any violation of the automatic stay.

The parties to the MSJs are: (i) Plaintiff-Debtor, Ms. Hoover; (ii) Defendant, PHH Mortgage Corporation ("PHH"), the special servicer for the loan (the "Loan") secured by the Bonney Lake Property; (iii) Defendant, NewRez, LLC ("NewRez"), the general servicer of the Loan; (iv) Defendant, HSBC Bank USA, N.A (the "Trust"), as Trustee of the Fieldstone Mortgage Investment Trust, Series 2006-2 (the "Beneficiary"); (v) Defendant, Quality Loan Service Corporation of Washington ("QLS"), the foreclosure trustee; and (vi) Defendant, IH6 Property Washington L.P. ("IH6"), the third-party purchaser at the foreclosure sale.

The following motions for summary judgment came before the Court for argument on November 20, 2020:

(1) Ms. Hoover's Motion for Partial Summary Judgment, ECF No. 42 ("Debtor's MSJ"), seeking a declaration that the foreclosure sale violated the automatic stay and that each defendant's conduct constitutes a willful violation of the automatic stay;[1]

(2) QLS's Motion for Summary Judgment seeking dismissal of Ms. Hoover's complaint for willful violation of the automatic stay with prejudice and its dismissal from the adversary proceeding, ECF No. 58 ("QLS's MSJ");

(3) PHH's, the Trust's, and NewRez's Joint Motion for Summary Judgment seeking dismissal of Ms. Hoover's complaint for willful violation of the automatic stay with prejudice and its dismissal from this adversary proceeding, ECF No. 62 ("PHH's MSJ");[2] and

---

[1] The Debtor's MSJ defers the issue of compensatory and punitive damages as alleged in the Amended Complaint to a future proceeding.

(4) IH6's Motion for Summary Judgment seeking dismissal of Ms. Hoover's complaint for willful violation of the automatic stay with prejudice, its dismissal from this adversary proceeding, and its motion for annulment of the automatic stay, ECF No. 65 ("IH6's MSJ").[3]

The Court having considered the files, records, evidence, and arguments presented in connection with the MSJs hereby makes the following findings of fact and conclusions of law.[4]

## II. FINDINGS OF FACT.

The following material facts are undisputed, and they are stated generally in chronological order.

**November 25, 2003:** Ali Suleiman signs his valid last will and testament (the "Will") that contains a pour-over clause placing all his remaining assets and property interests into the Suleiman Trust. Henry Decl. Ex. A, ECF No. 44.

Ali Suleiman created the Ali Suleiman Trust (the "Suleiman Trust"). Hoover Decl. Ex. 1, ECF No. 43. Ali Suleiman later amends the Suleiman Trust four times on January 4, 2006, June 2, 2009, March 24, 2011, and March 29, 2014. Hoover Decl. Ex. 1, ECF No. 43. Ali Suleiman was the original trustor and he named two of his children, Amir Suleiman and Ms. Hoover, as the Suleiman Trust's successor co-trustees. Hoover Decl. Ex. 1, ECF No. 43.

**November 1, 2005:** Ali Suleiman purchases the Bonney Lake Property and he takes title of the Bonney Lake Property as the fee owner. Moore Decl. Ex. A. ECF No. 63.

---

[2] PHH asserts that Ms. Hoover has not alleged or shown any actual damages and therefore Ms. Hoover has not made a prima facie claim for willful violation of the automatic stay. PHH's MSJ 15, ECF No. 62. This argument is unfounded. *See* Hoover Amended Complaint ¶¶ 68–69, ECF No. 7 (alleging actual damages and emotional distress).
[3] PHH joined IH6's Motion to Annul to Automatic Stay. Bankr. No. 19-42890, ECF No. 40.
[4] All parties have consented to this Court's entry of final orders or judgments in this adversary proceeding. *See* Local Rules W.D. Wash. Bankr. 7012-1(a) and (c); 28 U.S.C. § 157 and § 1334(b).

**July 25, 2006:** Ali Suleiman, through Ms. Hoover acting as his attorney-in-fact, signs a 30-year $333,000 note secured by the Bonney Lake Property with Fieldstone Mortgage Company. Prudent Decl. Ex. 1, ECF No. 64. Later in 2011, Ali Suleiman signs a loan modification on the note reducing the principal balance to $213,750.00. Prudent Decl. Ex. 4, ECF No. 64. Additionally, between 2000 to 2012, Ali Suleiman purchases two other real properties and conveys them to the Suleiman Trust: 24805 22nd Avenue South, Kent, Washington 98032 (the "Kent Property"), and 3435 Auburn Way, South #63, Auburn, Washington 98092 (the "Auburn Property"). *See* Moore Decl. Exs. B, C, D, E, ECF No. 63. Ali Suleiman's son, Amir Suleiman, resides at the Kent Property from approximately 2005 until 2017. Moore Decl. Ex. I, ECF No. 63.

**August 27, 2008:** The Bonney Lake Property's deed of trust is assigned to HSBC and recorded on September 2, 2008. Prudent Decl. Ex. 3, ECF No. 64. Ocwen Loan Servicing, LLC, a subsidiary of Ocwen Financial Corporation, ("Ocwen") serviced the Loan from 2011 to May 30, 2019. Prudent Decl. ¶ 5, ECF No. 64. PHH, at the time an indirect subsidiary of Ocwen, began servicing the Loan on June 1, 2019. Prudent Decl. ¶ 5, ECF No. 64.

**March 24, 2011:** The Suleiman Trust's third amendment changes § B.2.3.1 adding mandatory language about distributing the Bonney Lake Property to Ms. Hoover after Ali Suleiman's death:

> B.2.3.1 Residence. Trustor and the Trust Estate has held title to the property located at 18205 106th Street East, Bonney Lake, Washington, and Trustor is currently named as co-signer or Surety on the primary residence loan executed by Sarah and primary lender for the purposes of securing financing on said property for Sarah. Accordingly, as soon as practicable after the death of Trustor, Trustee shall distribute any and all interest Trustor, or the Trust Estate, may have in that certain residence and real property located at 106th Street East, Bonney Lake, Washington, to Trustors' daughter, Sarah V. Hoover, if she is surviving. This

distribution shall be in addition to Sarah's distributive share of the remainder Trust Estate and will carry with it any obligations against the residence . . . Additionally, to the extent that Trustor or the Trust Estate is responsible for paying for any or all part of such loan, such amount shall be considered a loan by Trustor or the Trust Estate to Sarah, shall be considered an asset of the Trust and specifically allocated to Sarah as a part of her share of the remainder Trust."

Hoover Decl. Ex. 1, ECF No. 43.

**February 24, 2015:** Ali Suleiman dies, Amir Suleiman and Ms. Hoover becomes co-trustees to the Suleiman Trust, and Mr. Suleiman's death triggers the contingent mandatory language in § B.2.3.1 making the Bonney Lake Property ready for distribution. Hoover Decl. Exs. 1 & 2, ECF No. 43.

Additionally, in May 2015, as co-trustees of the Suleiman Trust, Amir Suleiman and Ms. Hoover sell the Auburn Property and convey, via deed, the Auburn Property to a third party. Moore Decl. Ex. F, ECF No. 63. Then in 2017, the co-trustees of the Suleiman Trust sell the Kent Property and convey, via deed, the Kent Property to a third party for $320,000. Moore Decl. Ex. G, ECF No. 63. The co-trustees split the proceeds equally from both property sales among Amir Suleiman, Ms. Hoover, and Ali Suleiman's other child. Moore Decl. Ex. I, Amir Suleiman Dep. 18:2–13, 20:7–10, July 10, 2020, ECF No. 63.

**March 2018:** The Loan goes into default. Prudent Decl. ¶ 13, ECF No. 64.

**April 9, 2018:** Ocwen sends a notice of default to Ms. Hoover but it is addressed to Ali Suleiman. Moore Decl. Ex. H, Hoover Dep. 22:19–23:7, ECF No. 63.

**August 6, 2018:** Ms. Hoover and her husband, Leo Hoover, submit a non-account holder authorization form and mortgage assistance application to Ocwen, to explain their mortgage delinquency and seek assistance. Prudent Decl. Ex. 5, ECF No. 64.

**January 2019:** Sony Prudent, as PHH's Federal Rule of Civil Procedure's 30(b)(6) designee, admits that Ms. Hoover and her brother are both individually authorized third parties on Ocwen's Bonney Lake Property loan account. Henry Decl. Ex. A, Prudent Dep. 10:16–11:17, Aug. 12, 2020, ECF No. 73.

**January 11, 2019:** Ms. Hoover continues the loss mitigation process attempting to remedy the mortgage delinquency and properly assume the Loan. Hoover Decl. Ex. 2, ECF No. 43. Ms. Hoover's efforts to "save [their] home" by working with Ocwen/PHH continue for months thereafter. *See* Hoover Decl. ¶ 15–16, ECF No. 43. Ms. Hoover provides Ali Suleiman's death certificate to Ocwen on January 11, 2019. Hoover Decl. Ex. 2, ECF No. 43; Henry Decl. Ex. A, Prudent Dep. 39:24–25, Aug. 12, 2020, ECF No. 73.

**January 17, 2019:** Ocwen adds Ms. Hoover and her brother, Amir Suleiman, to the Bonney Lake Property Loan account as trustees of the Suleiman Trust and authorizes them on this account in their co-trustee capacities. Henry Decl. Ex. A, Prudent Dep. 54:21–55:1, Aug. 12, 2020, ECF No. 73. Such authorization allows Ms. Hoover and her brother to call Ocwen, later PHH, and discuss the account. Ex. A, Prudent Dep. 55:2–13, Aug. 12, 2020, ECF No. 73.

**March 14, 2019**: HSBC, which is the Trust, appoints NewRez as its attorney-in-fact to have, among other things, the authority to pursue any deficiency, debt or other obligation, secured or unsecured, including but not limited to those arising from foreclosure or other sale. Henry Supp. Decl. Ex. G, ECF No. 50.

**May 9, 2019:** Ocwen, in the process of acquisition by PHH, initiates foreclosure proceedings against the Bonney Lake Property through its trustee, QLS. Hoover Decl. ¶¶ 17–19, ECF No. 43. QLS's notice of trustee's sale is addressed to Ms. Hoover personally and

schedules the non-judicial foreclosure sale for September 13, 2019. Hoover Decl. ¶¶ 17–19, ECF No. 43.

**May 10, 2019, through September 8, 2019:** Ms. Hoover continues contacting Ocwen/PHH and QLS attempting to remedy the mortgage delinquency, avoid foreclosure, and submit paperwork as requested by Ocwen/PHH to become a "confirmed successor in interest."[5] *See generally* Hoover Decl. ¶¶ 18–40, ECF No. 43. On June 1, 2019, PHH begins servicing the Loan following the completion of the merger of Ocwen into PHH. Prudent Decl. ¶ 5, ECF No. 64; Henry Supp. Decl. Ex. G, ECF No. 50. PHH's records for the Loan also include the business records of the Loan's previous servicers. Prudent Decl. ¶ 5, ECF No. 64. When Ocwen transferred its servicing of the Loan to PHH, Ocwen incorporated the Loan's transaction history and other documents into PHH's records. Prudent Decl. ¶ 5, ECF No. 64.

In June 2019, Ms. Hoover contacts PHH as a confirmed authorized third party on the Bonney Lake Property loan account. Henry Decl. Ex. A, Prudent Dep. 69:13–17, Aug. 12, 2020, ECF No. 73. Ms. Hoover requests a reinstatement quote from QLS on August 14, 2019. Hoover Decl. Ex. 6, ECF No. 43. PHH learns that Ali Suleiman is deceased on August 28, 2019. Henry Decl. Ex. A, Prudent Dep 74:1–2, ECF No. 73. On August 30, 2019, PHH completes its verification that Ms. Hoover is an authorized third party on the Bonney Lake

---

[5] *See* 12 C.F.R. § 1024.31 Definitions (eff. April 19, 2018) ("Confirmed successor in interest means a successor in interest once a servicer has confirmed the successor in interest's identity and ownership interest in a property that secures a mortgage loan subject to this subpart . . . Successor in interest means a person to whom an ownership interest in a property securing a mortgage loan subject to this subpart is transferred from a borrower, provided that the transfer is: (1) A transfer by devise, descent, or operation of law on the death of a joint tenant or tenant by the entirety; (2) A transfer to a relative resulting from the death of a borrower; (3) A transfer where the spouse or children of the borrower become an owner of the property").

Property loan account and is the "executor or administrator of the [Ali Suleiman] estate." Henry Decl. Ex. A, Prudent Dep 94:4–25, ECF No. 73.

After Ms. Hoover and her husband spent months requesting information from Ocwen/PHH and QLS, QLS sends Ms. Hoover a $27,695.82 reinstatement quote on September 4, 2019. Hoover Decl. Ex. 6, ECF No. 43. The September 4, 2019 reinstatement quote states "[t]he [t]otal [a]mount [d]ue to [r]einstate, listed in the chart below, must be remitted no later than 9/12/2019." Hoover Decl. Ex. 6, ECF No. 43. This is nine days before the scheduled non-judicial foreclosure sale.

**September 9, 2019:** Ms. Hoover files a chapter 13 bankruptcy petition with no schedules (the "Bankruptcy"). Bankr. Case No. 19-42890, ECF No. 1. Ms. Hoover lists PHH as a creditor on her bankruptcy petition and mailing matrix but not QLS. *See*, *e.g.*, Hoover Decl. ¶ 42, ECF No. 43; Bankr. Case No. 19-42890, ECF No. 1. At the time of the Bankruptcy and the later foreclosure sale, Ms. Hoover, her husband and their two children as well as Ms. Hoover's niece and her two children are residing at the Bonney Lake Property. Hoover Decl. at ¶ 2, ECF No. 25.

**September 9, 2019:** PHH receives notice of the Bankruptcy on September 9, 2019, via fax. Bankr. No. 19-42890, Hoover Decl. Ex. J, ECF No. 25; Henry Decl. Ex. A, Prudent Dep. 85, ECF No. 73.

**September 12, 2019:** QLS performs the "[r]equired searches . . . [on] PACER generated on 09/12/19 – one day before sale . . . ." Henry Decl. Stenman Ex. 3, ECF No. 73. Additionally,

> [QLS] used LexisNexis Banko[ ], a third-party vendor, to search for and identify bankruptcy filings. These searches were specifically conducted for Sarah Hoover on: 1/31/2019, 2/20/2019, 3/10/2019, 4/18/2019, 4/24/2019, 5/9/2019, 7/15/2019, 8/9/2019, 9/6/2019,

1

> 9/12/2019, 9/13/2019, 9/14/2019, 9/16/2019, 9/17/2019, 9/18/2019.
> Banko never disclosed this bankruptcy filing in any of its searches.
> Quality also confirmed that the social security number it used for
> the Debtor in its searches is accurate and the social security
> number contained within the records of the loan servicer.

Bankr. Case No. 19-42890, Stenman Decl. ¶ 9, ECF No. 20.

Ms. Hoover also notifies PHH again, via telephone, of the Bankruptcy on September 12, 2019. Henry Decl. Ex. B, ECF No. 44. There is no record of PHH notifying QLS of the Bankruptcy before the scheduled non-judicial foreclosure sale.

**September 13, 2019:** QLS, as foreclosing trustee, conducts the scheduled non-judicial foreclosure sale and sells the Bonney Lake Property to IH6 for $356,000 with surplus funds of $167,407 (the "Sale"). Prudent Decl. ¶ 26, ECF No. 64. QLS transfers these surplus funds to this Court's registry upon Ms. Hoover's and the Defendants' stipulation on May 18, 2020. Prudent Decl. ¶ 26, ECF No. 64; Order Directing Deposit of Surplus Funds be Placed in a Non-Interest-Bearing Account in Court Registry Re: Stipulation for Deposit of Surplus Funds into the Court Registry Pending Further Court Order (ECF No. 15), ECF No. 40; Stipulated Statement Deposit of Surplus Funds, ECF No. 15.

**September 17, 2019:** QLS signs, notarizes, and delivers the trustee's deed (the "Deed") upon sale to IH6. Bankr. No. 19-42890, Stenman Decl. Ex. D, ECF No. 20.

**September 17, 2019**: NewRez executes a limited power of attorney making PHH, successor by merger to Ocwen, its attorney-in-fact to perform among other things the tasks related to a foreclosure proceeding. Henry Supp. Decl. Ex. G, ECF No. 50.

**September 24, 2019:** QLS receives notice of the Bankruptcy at 11:13 AM for the first time from Ms. Hoover's agent, David Miller of Elite Legal Network. Henry Decl. Ex. L, Stenman Dep. 56:4–23, July 7, 2020, ECF No. 73. Upon learning of the Bankruptcy, QLS

does not notify PHH or IH6. Henry Decl. Ex. L, Stenman Dep. 90:7–11, July 7, 2020, ECF No. 73. At 12:46 PM that day, QLS "ran [Ms. Hoover's] docket and forwarded to [bankruptcy] HUB for review." Henry Decl. QLS Ex. 1, ECF No. 73. Jeff Stenman, President of QLS, testifies at his July 7, 2020 deposition that QLS could not verify Ms. Hoover's interest in the Bonney Lake Property relating to the Bankruptcy so QLS did not notify PHH. Bankr. No. 19-42890, Stenman Decl. ¶ 2, ECF No. 20; Henry Decl. Ex. L, Stenman Dep. 90:1–11, July 7, 2020, ECF No. 73.

**September 25, 2019:** As noted by an IH6 employee, Jaqueline Rumens, IH6's agent posts a Notice to Vacate on the Bonney Lake Property. Henry Decl. IH6 Ex. 1, ECF No. 73 at 2.

**September 26, 2019:** IH6 records the Deed in Pierce County, Washington (recording No. 2019092660566). Bankr. No. 19-42890, Stenman Decl. Ex. D, ECF No. 20. The Bankruptcy is dismissed the same day for failure to file schedules, statements, lists, or a chapter 13 plan. Bankr. No. 19-42890, ECF No. 14.

**October 2, 2019:** The Bankruptcy is closed. Bankr. No. 19-42890.

**October 3, 2019:** Ms. Rumens leaves a voicemail for Ms. Hoover "to discuss her options." Henry Decl. IH6 Ex. 1, ECF No. 73.

**November 16, 2019:** Ms. Hoover emails Ms. Rumens about the Bonney Lake Property saying she "would like to try and make arrangements" with IH6, and Ms. Hoover provides her contact information explaining she is available by phone, text, or email. Henry Decl. IH6 Ex. 1, ECF No. 73.

**November 18, 2019:** Ms. Rumens emails Ms. Hoover at 12:06 PM about renting the home:

> . . . If you are interested in renting the home the first step would be
> to have a house inspection completed to make sure the home is
> safe and functional. Once that is completed and determined good
> to move forward, I would need any person 18 or over to complete
> the attached application and provide a copy of a government issued
> ID, along with the last 4 weeks of paystubs. Each application has a
> $50 fee associated with it. Upon approval, the deposit along with
> the move in monies would be due along with signing a lease. The
> rent is $2350.00 for 12 months. If you have pets, there is a $250
> non-refundable pet fee per pet, along with $35.00 for pet rent a
> month . . . .

Henry Decl. IH6 Ex. 1, ECF No. 73.

**November 26, 2019:** IH6 receives notice of the Bankruptcy via a letter dated November 22, 2019. Bankr. No. 19-42890, Lappano Decl. ¶ 8, ECF No. 19. The time that IH6 received the letter on November 26, 2019, is unknown. The same day, Ms. Rumens emails Ms. Hoover and leaves her a voicemail; Ms. Rumens states in her email "If you are wanting to apply to rent the home [from IH6], we will need to get the inspection done as soon as possible." Henry Decl. IH6 Ex. 1, ECF No. 73.

**December 24, 2019:** PHH formally approves Ms. Hoover as the "confirmed successor in interest" on the Loan. Prudent Decl. ¶ 27, ECF No. 64.

**January 10, 2020:** IH6 files a motion to reopen Ms. Hoover's chapter 13 case and a motion to annul the automatic stay for the Bonney Lake Property. Bankr. No. 19-42890, ECF Nos. 17, 18 (the "Annulment Motion"). The Court reopens the Bankruptcy on February 14, 2020. Bankr. No. 19-42890, ECF No. 37.

**January 25, 2020:** Ms. Hoover, through counsel, files a one-count complaint against PHH, QLS, and IH6 for willful violation of the automatic stay under 11 U.S.C. § 362(k)(1).[6] ECF No. 1; Bankr. No. 19-42890, ECF No. 23.

**February 20, 2020:** PHH joins IH6's Annulment Motion. Bankr. No. 19-42890, ECF No. 40.

**March 3, 2020:** The Court enters an order in the Bankruptcy consolidating the Annulment Motion into the Adversary Proceeding. Bankr. No. 19-42890, ECF No.44.

**March 2020:** Ms. Hoover begins sending $2,200 per month, the amount of the monthly mortgage payment, to her attorney's trust account to prevent her from falling further behind on the Loan. Henry Decl. Ex. J, ECF No. 73.

## III. DISCUSSION AND CONCLUSIONS OF LAW.

### A. Jurisdiction.

The Court has jurisdiction over the pending motions and adversary proceeding under 28 U.S.C. § 1334(b), and the motions and adversary proceeding are core matters under 28 U.S.C. § 157(b).

### B. Summary Judgment Standard.

The party seeking summary judgment bears the burden of demonstrating that there are no genuine issues of material fact and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a), made applicable by Rule 7056; *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23, 106 S. Ct. 2548 (1986). Summary judgment should be granted if, after taking all reasonable factual inferences in the nonmoving party's favor, the court finds that no

---

[6] Unless otherwise indicated, all chapter, section and rule references are to the Federal Bankruptcy Code, 11 U.S.C. §§ 101–1532, and to the Federal Rules of Bankruptcy Procedure, Rules 1001–9037.

reasonable jury could find for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S. Ct. 2505 (1986). The responding party must present affirmative evidence to defeat a properly supported motion for summary judgment. The responding party may not rest upon mere allegations or denials of its pleadings but must set forth specific facts showing that there is a genuine issue for trial. *Liberty Lobby*, 477 U.S. at 256. The burden is on the moving party to demonstrate it is entitled to summary judgment as a matter of law. *Stanley v. Novartis Pharm. Corp.*, 11 F. Supp. 3d 987, 994 (C.D. Cal. 2014) (citing *Margolis v. Ryan*, 140 F.3d 850, 852 (9th Cir.1998)). "The moving party bears the initial burden of identifying the elements of the claim or defense and evidence that it believes demonstrates the absence of an issue of material fact." *Stanley*, 11 F. Supp. at 994 (citing *Celotex*, 477 U.S. at 323).

"'[W]hen simultaneous cross-motions for summary judgment on the same claim are before the court, the court must consider the appropriate evidentiary material identified and submitted in support of both motions, and in opposition to both motions, before ruling on each of them.'" *Tulalip Tribes of Wash. v. Washington*, 783 F.3d 1151, 1156 (9th Cir. 2015) (quoting *Fair Hous. Council of Riverside Cnty., Inc. v. Riverside Two*, 249 F.3d 1132, 1134 (9th Cir. 2001)); *see also* 10A Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 2720 (4th ed.) ("The court must rule on each party's motion on an individual and separate basis, determining, for each side, whether a judgment may be entered in accordance with the Rule 56 standard."); *see also ACLU of Nev. v. City of Las Vegas*, 466 F.3d 784, 790–91 (9th Cir. 2006) ("We evaluate each motion separately, giving the nonmoving party in each instance the benefit of all reasonable inferences.") (citations and internal quotation marks omitted).

/ / /

/ / /

**C. The Sale Violated the Automatic Stay and the Sale is Void.**

**1. The Parties' Arguments on the Automatic Stay's Impact on the Sale.[7]**

Ms. Hoover asserts that the Sale violated one or more of the following provisions of the automatic stay, § 362(a)(3), (4), (5), or (6), because the Bankruptcy was pending during the Sale and she held an interest in the Bonney Lake Property that was property of her bankruptcy estate. Generally, these subsections of § 362(a) prohibit acts to obtain possession of, to exercise control over, or to enforce a lien against property of the estate or alternatively to pursue a pre-petition debt against property of the debtor. § 362(a)(3), (4), (5), and (6).

PHH asserts that the nature of Ms. Hoover's interest in her residence is not protected under the automatic stay because: 1) she was not obligated on the Loan; 2) she was not named on the Bonney Lake Property's title; 3) she was not a "confirmed successor in interest" in PHH's records; and 4) the Bonney Lake Property was held in a spendthrift trust that is excluded from being property of the estate under § 541(c)(2). IH6 takes a similar view concerning the nature of Ms. Hoover's interest in the Bonney Lake Property.

**2. Ms. Hoover's Interest in the Bonney Lake Property on the Date of the Sale was Property of the Estate Under § 541.**

**a. What Constitutes a Legal or Equitable Interest is Broadly Construed.**

Section 541(a)(1) provides generally that except for subsections (b) and (c)(2), the commencement of a bankruptcy case creates an estate comprised of "all legal or equitable interests of the debtor in property as of the commencement of the case." § 541(a)(1). What constitutes a debtor's "legal or equitable interest" is broadly construed. *United States v.*

---

[7] QLS's MSJ does not address the issue of whether the Sale violated the automatic stay but instead argues that its actions under these facts do not constitute a willful violation of the stay, which is addressed later. *See infra* Discussion § G.

*Whiting Pools, Inc.*, 462 U.S. 198, 204 (1983) (citing H.R. REP. NO. 95–595, at 367 (1977); S. REP. NO. 95–989, at 82 (1978), *as reprinted in* 1978 U.S.C.C.A.N. 5868, 6323 ("The scope of this paragraph [§ 541(a)(1)] is broad. It includes all kinds of property, including tangible or intangible property, causes of action (*see* Bankruptcy Act § 70a(6)), and all other forms of property currently specified in section 70a of the Bankruptcy Act.")). Furthermore, such legal and equitable interests are property of the estate wherever they are located and by whomever they are held (e.g., debtor or non-debtor). § 541(a).

Neither PHH nor IH6 dispute that Ms. Hoover held an *interest* in the Bonney Lake Property as of the date of the Sale. They also do not challenge the unambiguous language in the Will and Suleiman Trust provisions, which directed the Bonney Lake Property transfer first to the Suleiman Trust upon Mr. Suleiman's death and then clearly directed the co-trustees to transfer the Bonney Lake Property to Ms. Hoover "as soon as practicable" so long as she is surviving. *See* Hoover Decl. Ex. 1, ECF No. 43 (referring to the Suleiman Trust's third amendment § B.2.3.1). Instead, PHH and IH6 argue that Ms. Hoover's interest is not an interest in estate property largely because of irrelevant technicalities with title, successor in interest status, and failing to properly assume the Loan, which misconstrue the scope of § 541(a)(1). Accordingly, it is undisputed that Ms. Hoover held an interest in the Bonney Lake Property at the time of the Bankruptcy under § 541(a)(1).

Therefore, the remaining issue is whether such interest is excluded from the estate because it falls within the exception contained in § 541(c)(2).

/ / /

/ / /

/ / /

### b. Ms. Hoover's Interest in the Bonney Lake Property is Not Excluded from the Estate Under § 541(c)(2).

PHH and IH6 argue that the spendthrift provisions of the Suleiman Trust are restrictions on transfer, excluding the Bonney Lake Property from property of the estate under § 541(c).

Section 541(c)(1) generally states that except as provided in § 541(c)(2), property is property of the estate under § 541(a)(1), (2), and (5) even where there are restrictions or conditions on a debtor's transfer of such a property interest. Section 541(c)(2) thereafter provides that "[a] restriction on the transfer of a beneficial interest of the debtor in a trust *that is enforceable under applicable nonbankruptcy law* is enforceable in a case under this title." § 541(c)(2) (emphasis added). In this case, given the nature of the trust at issue and the Suleiman Trust's choice of law provision, Washington State law is the "applicable nonbankruptcy law" to determine whether the spendthrift provisions of the Suleiman Trust are enforceable.

Spendthrift trust provisions in Washington State only protect trust assets where the beneficial asset has not yet accrued. In Washington State, creditors can seize only the portion of a spendthrift trust that has accrued and is ready for distribution to the beneficiary. *Knettle v. Knettle*, 197 Wash. 225, 227–28, 84 P.2d 996, 997 (1938). The bankruptcy court has relied on this provision in the past in determining whether spendthrift trust property is property of the estate. *See Garrett v. Finley (In re Finley)*, 286 B.R. 163, 166 (Bankr. W.D. Wash. 2002). "This rule is contrary to the rule in the majority of jurisdictions that does not permit a creditor to reach a beneficiary's interest until it is actually paid to the beneficiary." *In re Finley*, 286 B.R. at 166. Thus, any accrued portions of a trust (i.e., ready for distribution) are subject to creditor

seizure under Washington State law and, therefore, are part of the bankruptcy estate. *Finley*, 286 B.R. at 166; *Knettle*, 197 Wash. at 227–28, 84 P.2d at 997.

The undisputed facts show that Ms. Hoover's interest in the Bonney Lake Property had accrued as of the date of the Bankruptcy's petition based on the provisions of the Will and the Suleiman Trust that triggered upon Mr. Suleiman's death. First, the Will's pour-over provision devised all his interests in the Bonney Lake Property to the Suleiman Trust. Second, the Suleiman Trust's third amendment contained mandatory conveyance language to distribute all interests that the Suleiman Trust has in the Bonney Lake Property to Ms. Hoover as soon as practicable after his death. Hoover Decl. Ex. 1, ECF No. 43. Since spendthrift provisions in Washington State only protect trust assets where the beneficial asset has not yet accrued, *see Finley*, 286 B.R. at 166, *and Knettle*, 197 Wash. at 227–28, 84 P.2d at 997, the Suleiman Trust's spendthrift provision is not enforceable under Washington State law. Accordingly, Ms. Hoover's interest in the Bonney Lake Property is not excluded from the estate under § 541(c)(2).

### 3. The Sale Violated § 362(a)(3) & (4) and is Void.

Ms. Hoover filed the Bankruptcy on September 9, 2019, Bankr. No. 19-42890, ECF No. 1, and the Sale occurred on September 13, 2019, Prudent Decl. ¶ 26, ECF No. 64. The Sale clearly constitutes an act to both enforce a lien and to take possession and control of property of the estate in violation of § 362(a)(3) and (4). Accordingly, based on the undisputed facts in this case, the Sale is void. *In re Schwartz*, 954 F.2d 569, 571 (9th Cir. 1992).

/ / /

/ / /

/ / /

**D. The Facts of this Case Do Not Support Annulment.**

      **1. Annulment Standards Generally.**

PHH and IH6 jointly seek to annul the automatic stay under § 362(d) in order to retroactively validate the void post-bankruptcy Sale. *See generally Lone Star Sec. & Video, Inc. v. Gurrola (In re Gurrola)*, 328 B.R. 158, 172 (9th Cir. BAP 2005) (explaining that annulment "has the effect of retroactively validating acts that otherwise violated the stay."). In general, although the debtor has the burden of proving that "cause" does not exist to annul the stay under § 362(d)(1) and 362(g)(2), bankruptcy courts have wide latitude in balancing the equities under the facts of a particular case. *See Natl Env't Waste Corp. v. City of Riverside (In re Natl. Env't Waste Corp.)*, 129 F.3d 1052, 1055 (9th Cir. 1997); *Fjeldsted v. Lien (In re Fjeldsted)*, 293 B.R. 12, 24 (9th Cir. BAP 2003).

In balancing the equities to determine if cause exists, bankruptcy courts have applied the following factors, as applicable to the facts of a particular case:

> 1. Number of filings;
> 2. Whether, in a repeat filing case, the circumstances indicate an intention to delay and hinder creditors;
> 3. A weighing of the extent of prejudice to creditors or third parties if the stay relief is not made retroactive, including whether harm exists to a bona fide purchaser;
> 4. The debtor's overall good faith under totality of circumstances test: *cf. Fid. & Cas. Co. of N.Y. v. Warren (In re Warren)*, 89 B.R. 87, 93 (9th Cir. BAP 1988) (chapter 13 good faith);
> 5. Whether creditors knew of stay but nonetheless took action, thus compounding the problem;
> 6. Whether the debtor has complied, and is otherwise complying, with the Bankruptcy Code and Rules;
> 7. The relative ease of restoring parties to the status quo ante;
> 8. The costs of annulment to debtors and creditors;
> 9. How quickly creditors moved for annulment, or how quickly debtors moved to set aside the sale or violative conduct;
> 10. Whether, after learning of the bankruptcy, creditors proceeded to take steps in continued violation of the stay, or whether they moved expeditiously to gain relief;

11. Whether annulment of the stay will cause irreparable injury to the debtor;

12. Whether stay relief will promote judicial economy or other efficiencies.

*Fjeldsted*, 293 B.R. 12, 25 (collectively the "Annulment Factors"). The Annulment Factors "are merely a framework for analysis and not a scorecard," and "[i]n any given case, one factor may so outweigh the others as to be dispositive." *Fjeldsted*, 293 B.R. at 25.

### 2. The Balance of the Equities in This Case Does Not Support Stay Annulment.

Several of the Annulment Factors—Annulment Factors 1, 2, & 6—look at the debtor's filing history and compliance with the Bankruptcy Code and Rules. Ms. Hoover is not a serial filer abusing the imposition of the stay through multiple filings. She filed only one bankruptcy case for the purpose of stopping the Sale. When the Sale proceeded despite the automatic stay, she did not oppose dismissing the case for failure to file schedules, statements, lists, or a chapter 13 plan. *See* Bankr. No. 19-42890, ECF No. 14. Additionally, Ms. Hoover is continuing to place the monthly payment amount for the Bonney Lake Property in her attorney's trust account pending this Court's decision and the filing of a chapter 13 plan to address remaining unpaid obligations to the Beneficiary under the Loan. These factors do not support annulment as they show that Ms. Hoover is not abusing the bankruptcy system.

In balancing the equities, courts look at the general good faith or lack of good faith of the debtor and the creditors, both generally and in connection with the stay violation— Annulment Factors 4, 9, & 10. PHH and IH6 allege that Ms. Hoover's failure to transfer title to the Bonney Lake Property shows a lack of good faith in light of Ms. Hoover's and her husband's prior real estate experience and their transfer of the Kent and Auburn Properties from the Suleiman Trust. The record, however, does not support a finding of bad faith under

these facts and circumstances. Under the terms of the Suleiman Trust, the co-trustees were directed to sell the Kent and Auburn Properties, necessitating the transfer of title upon such sale. The Suleiman Trust, however, treated the Bonney Lake Property differently—this property was to be transferred "as soon as practicable" to Ms. Hoover after Ali Suleiman's death. *See* Hoover Decl. Ex. 1, ECF No. 43. While the title transfer never happened, the record clearly supports Ms. Hoover's multiple good faith dealings with Ocwen, PHH, NewRez, and QLS regarding the Bonney Lake Property when she provided the necessary paperwork to notify the Beneficiary and its servicers of her father's death, and she provided the terms of the Will and Suleiman Trust and the documentation to assume or seek the Loan's modification. Also, Ms. Hoover tried resolving the foreclosure proceeding before the Sale and to otherwise resolve all issues related to the Bonney Lake Property in good faith.

In contrast, PHH's actions—one of the moving parties—shows a complete disregard for the automatic stay and Ms. Hoover's rights by failing to stop the Sale *despite receiving notice* of the Bankruptcy both four days and one day before the Sale. Such notice, by both fax and telephone, provided more than sufficient time for PHH to stop the Sale, yet PHH chose not to. At the same time, the other moving party, IH6, took, at a minimum, 45 days to file the Annulment Motion. While the earliest date of IH6's knowledge of the Bankruptcy is in dispute, it is undisputed through IH6's admission that IH6 was aware of the Bankruptcy at least as of November 26, 2019. Even so, IH6 waited until January 10, 2020, to file the Annulment Motion.

The final Annulment Factors compare the relative harm to the parties as well as the costs and ease of returning the affected parties to the *status quo ante* after an annulment of the stay—Annulment Factors 3, 7, 8, & 11. These relative harm factors are the most

significant factors in balancing the equities between IH6 and PHH, and Ms. Hoover in this case.

Here, if annulment is granted, IH6, as a third-party purchaser for investment purposes, would likely take advantage of a business opportunity and could rent and later sell the Bonney Lake Property to a third party for profit. Without annulment, the sale would be void and IH6 would lose this money-making opportunity. PHH also would benefit from annulment as it could then be paid in full with the funds currently held in the court registry. Without annulment, any prejudice to PHH would be minimal, however, because PHH would receive the monthly mortgage payments that Ms. Hoover has remitted to her attorney's trust account throughout the pendency of this litigation. Although there may be delay in curing any arrears on the Loan if Ms. Hoover files another chapter 13, the record here shows there is at least $167,000 of equity in the Bonney Lake Property, which will adequately protect PHH.

In contrast, if annulment is granted, Ms. Hoover and the seven other family members who live at the Bonney Lake Property (i.e., her husband, her two children, her niece, and the niece's three young children) would lose their family home and be required to move to another dwelling. *See* Bankr. No. 19-42890, Hoover Decl. ¶ 2, ECF No. 25. At a minimum, annulment would cause Ms. Hoover and her family financial harm, including relocation costs and costs of deposits or down payments on new residences (even assuming both families would be able to find affordable accommodations); physical dislocation; and likely significant emotional distress. Furthermore, these costs would be exacerbated by the ongoing global COVID-19 pandemic. As such, relative harm factors strongly weigh in favor of Ms. Hoover and not granting annulment.

From the undisputed facts, this Court finds that factors one, two, four, five, six, seven, eight, nine, ten, and eleven favor Ms. Hoover. These are the most important Annulment Factors under these facts, which tilt the scales of justice in Ms. Hoover's favor because of the balance of harm discussed above. Balancing the equities and considering the totality of the circumstances here, the Court denies IH6's motion, and PHH's joinder, to annul the automatic stay.

Having found the Sale violated the stay, the Sale is void, and annulment is not warranted here, the Court now turns to whether the each of the Defendants' actions in relation to the foregoing stay violations and the Sale constitute a willful violation of the stay entitling Ms. Hoover to prove damages under § 362(k) at a later proceeding.[8]

**E.  PHH, NewRez, and the Trust are Liable for Willfully Violating the Stay.**

**1.  PHH was the Agent of NewRez and the Trust When It Conducted the Sale.**

The record shows that the Trust delegated authority to NewRez under a power of attorney to have authority to pursue, among other things, a foreclosure or other sale of the Bonney Lake Property. Following the merger of PHH and Ocwen, NewRez delegated the authority under a limited power of attorney to PHH to take certain such actions in connection with a foreclosure sale. *See* Henry Supp. Decl. Ex. G 2–6, ECF No. 50.

"A power of attorney is a written instrument by which one person as principal appoints another as agent and confers on the agent's authority to act in the place and stead of the principal for the purposes set forth in the instrument." *Winters v. Quality Loan Serv. Corp*, 11 Wn. App. 2d 628, 646, 454 P.3d 896, 906 (Wash. Ct. App. 2019) (citing *Bryant v. Bryant*, 125

---

[8] Under § 362(k)(1), "an individual injured by any willful violation of a stay provided by this section shall recover actual damages, including costs and attorneys' fees, and, in appropriate circumstances, may recover punitive damages." § 362(k)(1).

Wn.2d 113, 118, 882 P.2d 169, 171 (1994)). Additionally, the Uniform Power of Attorney Act, chapter 11.125, defines an agent as follows:

> [A] person granted authority to act for a principal under a power of attorney, whether denominated an agent, attorney-in-fact, or otherwise. The term includes an original agent, coagent, successor agent, and a person to which an agent's authority is delegated.

Wash. Rev. Code ("RCW") § 11.125.020(1).

The scope of the two powers of attorney clearly encompass the actions of PHH and NewRez taken under their delegated authority "[t]o pursue any . . . debt or other obligation . . . arising from foreclosure or other sale[;]" conduct the Sale or discontinue the Sale; appear in bankruptcy cases; and execute documents related to the Sale. *See* Henry Supp. Decl. Ex. G 2–6, ECF No. 50. Thus, PHH was an agent of NewRez and the Trust, and PHH had authority to bind them both as principals to its actions relating to the Sale.[9] Furthermore, PHH's role as an agent of NewRez and the Trust meets the clear definition of "agent" in RCW § 11.125.020(1).

### 2. PHH's Actions and Failures to Act in Connection with the Sale are Willful Violations of the Stay Under Applicable Ninth Circuit Law.

Whether PHH or the other Defendants willfully violated the automatic stay is a question of fact. *Eskanos & Adler, P.C. v. Leetien*, 309 F.3d 1210, 1213 (9th Cir. 2002). The Ninth Circuit's test for willful automatic stay violations under § 362(k)(1) requires a showing that: (1) the creditor knew of the automatic stay, and (2) the actions in violation of the stay were intentional acts or failures to act in remedying the violation. *In re Dyer*, 322 F.3d 1178, 1192 (9th Cir. 2003); *Eskanos*, 309 F.3d at 1215; *In re Bloom*, 875 F.2d 224, 227 (9th Cir. 1989). No specific intent is required; a good faith belief that the stay is not being violated "is not

---

[9] Accordingly, hereafter, references to PHH's actions shall be deemed to apply to NewRez and the Trust.

relevant to whether the act was 'willful' or whether compensation must be awarded." *Johnston Envt'l Corp. v. Knight (In re Goodman),* 991 F.2d 613, 618 (9th Cir. 1993).

Furthermore, the Ninth Circuit imposes a duty on a creditor with knowledge of a bankruptcy filing to remedy the stay violations and undo its acts that violate the automatic stay. *See Dyer*, 322 F.3d at 1192 (holding that when a creditor has knowledge of a violation of the automatic stay, that creditor has an affirmative duty to undo the violation); *Rediger Inv. Corp. v. H Granados Commc'ns, Inc. (In re H Granados Commc'ns, Inc.)*, 503 B.R. 726, 737 (9th Cir. BAP 2013) (explaining that once a creditor and its counsel are aware of a debtor's bankruptcy, the onus is on the creditor to cease all efforts related to the debtor in its pending state-court action without further order from the bankruptcy court and to remedy the impact of existing stay violations); *Copeland v. Kandi (In re Copeland)*, 441 B.R. 352, 360 (Bankr. W.D. Wash. 2010) (failing to take reasonable steps to remedy an action that violates the stay is a continuing stay violation). A creditor's liability under § 362(k)(1) continues until full restitution is made or, if after expiration of the stay, until the court orders full restitution. *In re LeGrand*, 612 B.R. 604, 612 (Bankr. E.D. Cal. 2020) (citing *Snowden v. Check Into Cash of Wash., Inc. (In re Snowden)*, 769 F.3d 651, 659 & 662 (9th Cir. 2014); *Sundquist v. Bank of America, N.A. (In re Sundquist)*, 566 B.R. 563, 586 (Bankr. E.D. Cal. 2017)).

There is no genuine dispute of material fact that PHH had notice of the Bankruptcy on September 9, 2019, via fax. Bankr. No. 19-42890, Hoover Decl. Ex. J, ECF No. 26; Henry Decl. Ex. A, Prudent Dep. 84, Aug. 12, 2020, ECF No. 73. PHH also received additional notice of the Bankruptcy before the Sale on September 12, 2019. Henry Decl. Ex. B, ECF No. 44. Despite PHH receiving these notices before the Sale, PHH did nothing. Before the Sale, it did not inform QLS, the foreclosure trustee conducting the Sale, or any potential purchasers at

the Sale, including IH6, of the Bankruptcy. PHH's failure to act allowed QLS to sell the Bonney Lake Property at the Sale to a third-party purchaser, allowed the Deed to be transferred to that purchaser, and allowed that purchaser to record the Deed. This all occurred while the automatic stay was in effect. PHH sat on the information and did not take any steps to rectify its stay violation until it joined IH6's Motion to Annul the Automatic Stay on February 20, 2020—160 days after the Sale. *See* Bankr. No. 19-42890, ECF No. 40.

Under these undisputed facts, PHH willfully violated the automatic stay. *See, e.g.*, *Burton v. Infinity Capital Mgmt.*, 862 F.3d 740, 747 (9th Cir. 2017) (explaining that a party that fails to at least alert the court of potential conflicts between an order and the automatic stay does not satisfy a non-debtor's affirmative duty of compliance). PHH knew that the automatic stay existed, and it bears responsibility for any violations caused by its intentional actions (or inactions) until the sale is rescinded and title is restored to Ms. Hoover, regardless of whether it specifically intended such actions to violate the stay. *See, e.g., Goodman*, 991 F.2d at 618. In doing so, PHH also was acting on behalf of NewRez and the Trust. Accordingly, the Debtor's MSJ is granted regarding PHH, NewRez, and the Trust, and PHH's MSJ is denied.

**F. A Material Issue of Fact Exists on When IH6 Received Notice of the Bankruptcy and Prevents Granting Summary Judgment to Either Ms. Hoover or IH6.**

The next issue is whether either Ms. Hoover or IH6 is entitled to summary judgment as a matter of law on the issue of whether IH6 willfully violated the automatic stay. As noted above, it is undisputed that IH6 did not know of the Bankruptcy until after it purchased the Bonney Lake Property and after QLS delivered the Deed on September 17, 2019, *see* Bankr. No. 19-42890, Stenman Decl. Ex. D, ECF No. 20. As explained more fully below, there is a dispute, however, about when IH6 thereafter acquired knowledge of the Bankruptcy. This fact is material to the Court's determination of whether IH6 willfully violated the stay.

IH6 asserts that it was first notified of the Bankruptcy on November 26, 2019, when it received a letter from Ms. Henry dated November 22, 2019, about the Sale's violation of the automatic stay. *See* Bankr. No. 19-42890, Lappano Decl. Ex. C ¶¶ 7–8, ECF No. 19. Ms. Hoover alleges, however, that IH6 knew about the Bankruptcy significantly earlier. Specifically, Ms. Hoover alleges the following three earlier dates that IH6 received notice of the Bankruptcy: (1) September 24, 2019: Elite Legal Network notified IH6 on Ms. Hoover's behalf, Bankr. No. 19-42890, Hoover Decl. ¶ 49, ECF No. 25; (2) October 1, 2019: Ms. Hoover said "I spoke to Michael Lappano at IH6. I believe this was on October 1, 2019. I informed him that I had filed bankruptcy. Mr. Lappano indicated that he would have no problem selling my house back to me, but that he would require QLS to pay an additional $100,000 above IH6's purchase price at the foreclosure sale." Hoover Decl. ¶ 53, ECF No. 43; and (3) October 23, 2019: QLS's General Counsel, Robert McDonald, states in a timestamped email that the "third[-]party purchaser aware[sic] of bankruptcy filing and did not want sale unwound. He has been advised to seek confirmation of sale in BK – not sure if he did that or not. I will contact him now for an update." Henry Decl. QLS Ex. 1, ECF No. 73.[10]

For purposes of both Ms. Hoover's and IH6's MSJs, it is undisputed that between September 17, 2019 (the date IH6 received the Deed), and November 26, 2019 (the date IH6 received notice of the Bankruptcy), IH6 representatives recorded the Deed, on September 26, 2019.[11] It is also undisputed that during this period, IH6's representatives had several

---

[10] Each of the foregoing allegations has potential evidentiary issues, particularly hearsay issues or a lack of foundation that prevent the Court from relying on them for purposes of summary judgment. *See Beyene v. Coleman Sec. Servs., Inc.*, 854 F.2d 1179, 1181 (9th Cir. 1988) (stating a trial court can only consider admissible evidence in ruling on a motion for summary judgment). These issues could be addressed at trial through additional evidence or testimony.

[11] The Court dismissed the Bankruptcy on the same day. The relative timing of these two events is not clear from the record.

interactions with Ms. Hoover where they offered to sell or rent the Bonney Lake Property to her.

Taking the facts in the light most favorable to IH6 in connection with Ms. Hoover's MSJ, IH6 first learned of the Bankruptcy on November 26, 2019. Additionally, IH6's representatives had their last interaction with Ms. Hoover on that same date, halting all actions against Ms. Hoover and the Bonney Lake Property after learning of the Bankruptcy.[12] These facts, if undisputed, would support a determination that IH6 did not willfully violate the automatic stay.

On the other hand, if the Court takes the facts in the light most favorable to Ms. Hoover in connection with IH6's MSJ, IH6 was informed about the Bankruptcy as early as September 24, 2019. Despite this knowledge, IH6 recorded the Deed on September 26, 2019. Additionally, IH6's representatives thereafter contacted Ms. Hoover several times about selling or renting the Bonney Lake Property to her. These facts, if undisputed, would support a determination that IH6 willfully violated the automatic stay.

Based on the record before it, the Court finds that issues of material fact exist about when IH6 learned of the Bankruptcy and whether IH6 took any actions with respect to the Bonney Lake Property thereafter that constitute a willful violation of the stay. Accordingly, the Court must deny both Ms. Hoover's MSJ and IH6's MSJ on the claim that IH6 willfully violated the automatic stay.[13]

/ / /

---

[12] Ms. Hoover alleges that on the date IH6 admits to receiving notice, November 26, 2019, a representative of IH6 contacted Ms. Hoover about rent. Again, the record is not clear about the relative timing between these two events. Additionally, Mr. Lappano's Declaration indicates that "[a]fter receiving notice of Sara's [sic] Hoover's claim that the trustee's sale violated the automatic stay, IH6 Property immediately put a hold on its Unlawful Detainer action and retained counsel to address Sarah Hoover's claim in the bankruptcy." *See* Lappano Decl. ¶¶ 7–8, Bankr. No. 19-42890, ECF No. 19.

[13] If Ms. Hoover seeks to pursue her claims against IH6 at trial, the Court may require briefing on the dismissal's impact on her § 362(k) claims relative to the date of IH6's notice of the Bankruptcy.

**G. QLS Did Not Willfully Violate the Automatic Stay Under the Facts of this Case.**

    **1. The Material Facts and the Parties' Positions.**

        *a. Undisputed Relevant Facts.*

The following undisputed material facts are relevant to whether QLS willfully violated the automatic stay. QLS served as the foreclosure trustee for the Sale on September 13, 2019. On September 17, 2019, before learning about the Bankruptcy, QLS delivered the Bonney Lake Property's Deed to IH6, the third-party purchaser. Bankr. No. 19-42890, Stenman Decl. Ex. D, ECF No. 20. QLS did not learn about the stay until September 24, 2019. Henry Decl. Ex. L, Stenman Dep. 56:4–23, July 7, 2020, ECF No. 73; Henry Decl. Stenman Ex. 3, ECF No. 73. On that date, QLS inspected Ms. Hoover's skeletal bankruptcy petition (i.e., a petition, matrix listing only PHH as a creditor, but no schedules or bankruptcy plan) but could not verify her ownership interest in the Bonney Lake Property. Henry Decl. Ex. L, Stenman Dep. 90:1–11, ECF No. 73; Bankr. Case No. 19-42890, ECF No. 1. Additionally, between January 31, 2019, and September 18, 2019, QLS searched LexisNexis Banko 15 times for the Bankruptcy using her correct social security number. Bankr. Case No. 19-42890, Stenman Decl. ¶ 9, ECF No. 20. The Bankruptcy did not appear through these searches. Bankr. Case No. 19-42890, Stenman Decl. ¶ 9, ECF No. 20.

Upon learning of the Bankruptcy, QLS did not immediately notify PHH or IH6. QLS did not take steps to void or rescind the Sale, take any action to obtain possession of or exert control over the Bonney Lake Property, or otherwise interfere with Ms. Hoover's interest in the Bonney Lake Property. The Court dismissed the Bankruptcy on September 26, 2019, and closed the Bankruptcy on October 2, 2019.

Additionally, on October 23, 2019, QLS's General Counsel, Robert McDonald, states in a timestamped email that the "third[-]party purchaser aware[sic] of bankruptcy filing and did

not want sale unwound. He has been advised to seek confirmation of sale in BK – not sure if he did that or not. I will contact him now for an update." Henry Decl. QLS Ex. 1, ECF No. 73.[14]

Significantly, there was a legal dispute among Ms. Hoover, the PHH defendants, and IH6 concerning the nature of Ms. Hoover's interest in the Bonney Lake Property and the impact of the automatic stay on the Sale. QLS took no position on these legal issues in its pleadings in this case.

### b. The Parties' MSJ Arguments on QLS's Alleged Willful Stay Violation.

Ms. Hoover seeks a declaration that QLS be held liable for a willful violation of the stay for its inaction after learning about the Bankruptcy. Specifically, Ms. Hoover argues that QLS is jointly and severally liable with the other Defendants for willfully violating the stay because it failed to notify this Court of the Sale and surplus funds, failed to notify PHH upon learning of the Bankruptcy, and failed to cooperate with Ms. Hoover to unwind the sale.[15]

QLS argues it did not willfully violate the stay because it received notice of the Bankruptcy after it delivered the Deed to IH6 on September 17, 2019. Further, QLS argues it

---

[14] This evidence cannot be accepted for determining the date IH6 received notice of the Bankruptcy. However, this Court notes there does not appear to be any dispute that QLS believed on October 23, 2019, that it had communicated with the third-party purchaser who did not want the Sale unwound, and that the third-party purchaser would be seeking a ruling in bankruptcy court to resolve the automatic stay issue.

[15] In the complaint, Ms. Hoover also argued that QLS should have voided the sale under RCW 61.24.050(2) because it received notice on the 11th day after the Sale. However, in Ms. Hoover's response to QLS's original motion for summary judgment and dismissal, Ms. Hoover seems to discard this argument on QLS's liability for a willful violation. Hoover Resp. to QLS 7:17–19, ECF No. 28. Ms. Hoover states, "[t]o be clear, QLS'[s] liability for violating the automatic stay arises from its inaction (regardless of when it learned of the automatic stay). Any references to the [Washington] Deed of Trust Act are not pertinent to liability." Hoover Resp. to QLS 7:17–19, ECF No. 28. Since the Debtor's MSJ only addresses liability, the Court will not address the RCW 61.24.050(2) argument. This Court notes that if it held QLS was obligated to void a sale upon receiving notice of a bankruptcy filing despite RCW 61.24.050(2)'s discretionary language, the Court would not find QLS's failure to do so constituted a willful stay violation here because of the timing when QLS received notice and QLS's inability to verify Ms. Hoover's Bonney Lake Property interest from the Bankruptcy.

could not be a "judge" in resolving whether the sale should be unwound because of the legal dispute among Ms. Hoover, PHH, and IH6 over the automatic stay's impact on the nature of Ms. Hoover's interest in the Bonney Lake Property. For the reasons below, this Court agrees with QLS.

### 2. Under these Facts, QLS's Failure to Act Is Not a Willful Stay Violation.

While the Ninth Circuit has determined that a "failure to act" may constitute a willful stay violation, *see Dyer*, 322 F.3d at 1192, here the undisputed facts do not establish that QLS has committed a willful stay violation. Such findings are typically made in connection with a party's failure to remedy a stay violation it committed or where such party had a duty to take remedial action, *see supra* Discussion § E.2. It is undisputed, however, that QLS did not take any action with knowledge of the Bankruptcy. QLS conducted the Sale according to the Washington Deed of Trust Act ("DTA") and sold the Bonney Lake Property to a third-party purchaser without knowledge of the Bankruptcy. Thus, QLS did not commit any actions in conducting the Sale that are willful stay violations. Following the Sale and before receiving notice of the Bankruptcy, QLS also delivered the Deed to the third-party purchaser. As Ms. Hoover admits, upon physical delivery of the Deed to IH6, QLS had complied with its duties under the DTA. *See* RCW 61.24.050(1).

After completing its duties under the DTA, it is further undisputed that QLS did not commit any act against Ms. Hoover or the Bonney Lake Property that violated the provisions of Section 362(a). Although this Court determined the Sale is void, it is undisputed that QLS was unaware of the Bankruptcy during the Sale and delivery of the Deed. After receiving notice of the Bankruptcy, QLS also did not commit a willful violation by failing to act after fulfilling its obligations under the DTA because it had no ability to take any further action

(absent a court order), like rescinding the Sale. Under these facts, the Court finds that QLS did not commit any act or fail to take any action that willfully violated the automatic stay.

Accordingly, the Debtor's MSJ as to QLS's alleged willful stay violation is denied and QLS is entitled entry of an order declaring that its actions to date did not constitute a willful violation of the stay.

### III.    Conclusion.

The Court concludes that the Bonney Lake Property foreclosure sale to IH6 and subsequent Deed transfer and recordation violated the automatic stay and are therefore void. All Defendants shall cooperate with Ms. Hoover and her counsel to immediately take all necessary steps to undo the foreclosure sale of the Bonney Lake Property.

Ms. Hoover has established as a matter of law that she is entitled to partial summary judgment as to PHH's, the Trust's, and NewRez's willful stay violations. The Court makes no finding as to the specific damages owed to Ms. Hoover.

As described above, a genuine dispute of material fact exists concerning IH6's alleged willful violation of the automatic stay. The Debtor's MSJ and IH6's MSJ on this issue are denied.

Regarding QLS, QLS has established that it is entitled to summary judgment as a matter of law. QLS's MSJ is granted but QLS is not yet dismissed. This Court will address QLS's dismissal at a future status conference, *see below*. As such, the Debtor's MSJ as to QLS is denied.

IH6's MSJ and PHH's MSJ are denied, and IH6's and PHH's Annulment Motion is denied.

1

Judge Heston's Courtroom Deputy will contact the parties to schedule a status
conference to discuss how best to proceed in this case in light of the Court's Memorandum
Decision, including the effect of the Sale being declared void, the remaining claims against
IH6, and resolution of any damage claims.

/// End of Memorandum Decision ///

Below is the Order of the Court.

1

2

_Mary Jo Heston_

**Mary Jo Heston**
**U.S. Bankruptcy Judge**

3

(Dated as of Entered on Docket date above)

4

5

6

7

8

## UNITED STATES BANKRUPTCY COURT
## WESTERN DISTRICT OF WASHINGTON AT TACOMA

9

10    In re:

Bk. No. 19-42890

11    SARAH HOOVER,

12                            Debtor.

13    SARAH HOOVER,

Adversary No. 20-04002

14                            Plaintiff,

15          v.

**ORDER ON CROSS-MOTIONS FOR
SUMMARY JUDGMENT**

16    QUALITY LOAN SERVICE CORPORATION
      OF WASHINGTON; PHH MORTGAGE

17    CORPORATION D/B/A PHH MORTGAGE
      SERVICES; HSBC BANK USA, N.A., AS

18    TRUSTEE OF THE FIELDSTONE
      MORTGAGE INVESTMENT TRUST,

19    SERIES 2006-2; NEWREZ, LLC; AND IH6
      PROPERTY WASHINGTON, L.P. D/B/A

20    INVITATION HOMES,

21

22                            Defendants.

23

24          This  adversary  proceeding  and  the  pending  motions  for  summary  judgment

25    (collectively the "MSJs") involve the impact of the automatic stay on the post-bankruptcy

ORDER ON CROSS-MOTIONS
FOR SUMMARY JUDGMENT - 1

foreclosure sale of the Plaintiff's, Ms. Sarah Hoover ("Ms. Hoover"), family residence located at 18205 106th Street East, Bonney Lake, Washington (the "Bonney Lake Property"), and whether each defendant is liable for any violation of the automatic stay.

The parties to the MSJs are: (i) Plaintiff-Debtor, Ms. Hoover; (ii) Defendant, PHH Mortgage Corporation ("PHH"), the special servicer for the loan (the "Loan") secured by the Bonney Lake Property; (iii) Defendant, NewRez, LLC ("NewRez"), the general servicer of the Loan; (iv) Defendant, HSBC Bank USA, N.A (the "Trust"), as Trustee of the Fieldstone Mortgage Investment Trust, Series 2006-2 (the "Beneficiary"); (v) Defendant, Quality Loan Service Corporation of Washington ("QLS"), the foreclosure trustee; and (vi) Defendant, IH6 Property Washington L.P. ("IH6"), the third-party purchaser at the foreclosure sale.

The following MSJs came before the Court for argument on November 20, 2020:

(1) Ms. Hoover's Motion for Partial Summary Judgment, ECF No. 42 ("Debtor's MSJ"), seeking a declaration that the foreclosure sale violated the automatic stay and that each defendant's conduct constitutes a willful violation of the automatic stay;[1]

(2) QLS's Motion for Summary Judgment seeking dismissal of Ms. Hoover's complaint for willful violation of the automatic stay with prejudice and its dismissal from the adversary proceeding, ECF No. 58 ("QLS's MSJ");

(3) PHH's, the Trust's, and NewRez's Joint Motion for Summary Judgment seeking dismissal of Ms. Hoover's complaint for willful violation of the automatic stay with prejudice and its dismissal from this adversary proceeding, ECF No. 62 ("PHH's MSJ"); and,

(4) IH6's Motion for Summary Judgment seeking dismissal of Ms. Hoover's complaint for willful violation of the automatic stay with prejudice, its dismissal from this adversary

---

[1] The Debtor's MSJ defers the issue of compensatory and punitive damages as alleged in the Amended Complaint to a future proceeding.

ORDER ON CROSS-MOTIONS
FOR SUMMARY JUDGMENT - 2

proceeding, ECF No. 65 ("IH6's MSJ"), and its motion for annulment of the automatic stay, Bankr. No. 19-42890, ECF No. 18.[2]

After oral argument on these MSJs, the Court took these matters under advisement. The Court having considered the evidence and arguments presented, and a Memorandum Decision having been entered and incorporated herein, now, therefore, it is hereby

**ORDERED** that the foreclosure sale of the Bonney Lake Property is void and all Defendants shall cooperate with Ms. Hoover and her counsel to immediately take all necessary steps to undo the foreclosure sale of the Bonney Lake Property; it is further

**ORDERED** that the Debtor's MSJ, ECF No. 42, is granted against PHH but denied in its requested relief against QLS and IH6; it is further

**ORDERED** that PHH's MSJ, ECF No. 62, and IH6's MSJ, ECF No. 65, are denied; it is further

**ORDERED** that IH6's and PHH's Annulment Motion, Bankr. No. 19-42890, ECF Nos. 18, 40, is denied; it is further

**ORDERED** that QLS's MSJ, ECF No. 58, is granted but, pursuant to the Memorandum Decision, QLS is not yet dismissed from this adversary proceeding; it is further

**ORDERED** that Judge Heston's Courtroom Deputy will contact the parties to schedule a time and date for a status conference to discuss how best to proceed in this case in light of the Court's Memorandum Decision, including the effect of the Sale being declared void, the remaining claims against IH6, and resolution of any damage claims.

/// End of Order ///

---

[2] PHH joined IH6's Motion to Annul to Automatic Stay. Bankr. No. 19-42890, ECF No. 40 (collectively the "Annulment Motion").

ORDER ON CROSS-MOTIONS
FOR SUMMARY JUDGMENT - 3

**CERTIFICATE OF SERVICE**

On February 26, 2021, I served the foregoing document(s): DEFENDANTS' NOTICE OF APPEAL AND STATEMENT OF ELECTION, in the manner described below:

| | |
|---|---|
| Jason D. Anderson<br>Anderson Law of King County, PLLC<br>787 Maynard Ave S., Suite B<br>Seattle, WA 98104<br>Jason@alkc.net<br>*Counsel for Plaintiff/Debtor* | ☒ CM/ECF<br>☐ UPS Overnight<br>☐ UPS 2 Day Shipping<br>☐ Email<br>☐ Courier |
| Christina L. Henry<br>Henry & Degraaff, P.S.<br>787 Maynard Ave S., Suite B<br>Seattle, WA 98104<br>chenry@hdm-legal.com<br>*Counsel for Plaintiff/Debtor* | ☒ CM/ECF<br>☐ UPS Overnight<br>☐ UPS 2 Day Shipping<br>☐ Email<br>☐ Courier |
| Joseph W. McIntosh<br>McCarthy & Holthus, LLP<br>108 1st Ave South, Suite 300<br>Seattle, WA 98104<br>jmcintosh@mccarthyholthus.com<br>*Counsel for Quality Loan Service*<br>*Corporation of Washington* | ☒ CM/ECF<br>☐ UPS Overnight<br>☐ UPS 2 Day Shipping<br>☐ Email<br>☐ Courier |
| John A. McIntosh<br>Schweet Linde & Coulson, PLLC<br>575 S. Michigan St.<br>Seattle, WA 98108<br>johnm@schweetlaw.com<br>*Counsel for IH6 Property Washington,*<br>*L.P.* | ☒ CM/ECF<br>☐ UPS Overnight<br>☐ UPS 2 Day Shipping<br>☐ Email<br>☐ Courier |

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Dated: February 26, 2021

Rachel M. Perez

NOTICE OF APPEAL AND STATEMENT OF ELECTION
AP No. 20-04002-MJH
Page 5

HOUSER LLP
600 University St., Ste. 1708
Seattle, WA 98101
PH: (206) 596-7838
FAX: (206) 596-7839

Case 20-04002-MJH    Doc 89    Filed 02/26/21    Ent. 02/26/21 19:26:29    Pg. 40 of 40