```
                    UNITED STATES BANKRUPTCY COURT
                    WESTERN DISTRICT OF WASHINGTON

                                   .   Case No.  19-42890-MJH
IN RE:                             .
                                   .   Chapter 13
SARAH HOOVER,                      .
                                   .
            Debtor.                .
. . . . . . . . . . . . . . . . .
                                   .
SARAH HOOVER,                      .   Adv. No. 20-04002-MJH
                                   .
            Plaintiff,             .
                                   .
     v.                            .
                                   .
QUALITY LOAN SERVICE               .   1717 Pacific Avenue, Suite 2100
CORPORATION OF WASHINGTON,         .   Tacoma, WA 98402
et al.,                            .
                                   .   Monday, March 29, 2021
            Defendants.            .   1:01 p.m.
. . . . . . . . . . . . . . . . .

          TRANSCRIPT OF MOTION FOR STAY PENDING APPEAL;
     MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF
                        #3:21-cv-05154-BHS
```
**BEFORE THE HONORABLE MARY JO HESTON VIA TELECONFERENCE**
**UNITED STATES BANKRUPTCY COURT JUDGE**

TELEPHONIC APPEARANCES:

For the Plaintiff:        Henry & Degraaff, P.S.
                          By:  CHRISTINA L. HENRY, ESQ.
                          787 Maynard Avenue South
                          Seattle, WA 98104
                          (206) 330-0595

                          Anderson Law of King County, PLLC
                          By:  JASON D. ANDERSON, ESQ.
                          787 Maynard Avenue South, Suite B
                          Seattle, WA 98104
                          (206) 395-2665

TELEPHONIC APPEARANCES CONTINUED.

Audio Operator:           Courtroom ECRO Personnel

Transcription Company:    Access Transcripts, LLC
                          10110 Youngwood Lane
                          Fishers, IN 46038
                          (855) 873-2223
                          www.accesstranscripts.com

       Proceedings recorded by electronic sound recording,
          transcript produced by transcription service.

TELEPHONIC APPEARANCES (Continued):

| | |
|---|---|
| For PHH Mortgage Corporation, HSBC Bank USA, N.A., and NewRez, LLC: | Houser Law LLP<br>By: EMILIE K. EDLING, ESQ.<br>9600 Southwest Oak Street, Suite 570<br>Portland, OR 97223<br>(503) 914-1382 |
| | Houser Law LLP<br>By: ROBERT W. NORMAN, ESQ.<br>9070 Research Drive<br>Irvine, CA 92618<br>(949) 679-1111 |

```
 1        (Proceedings commence at 1:01 p.m.)
 2        THE COURT:  -- and this is the time set for -- in the
 3   adversary proceeding Hoover v. QLS, et al, Adversary Proceeding
 4   Number 20-4002, for hearing on the motion for stay pending
 5   appeal and a continued status conference.
 6        Who do I have on for Ms. Hoover?
 7        MS. HENRY:  Christina Henry on behalf of Ms. Hoover.
 8        THE COURT:  Okay.  Mr. --
 9        MR. ANDERSON:  And Jason Anderson, also on behalf of
10   Ms. Hoover.
11        THE COURT:  All right, good afternoon.
12        And for PHH and HSBC and NewRez, do I have Mr. Norman
13   on the phone?  Ms. Edling?  Anyone on behalf of PHH?
14        Is that you, Mr. Norman?
15        MS. EDLING:  Emilie Edling just came on the line.  We
16   -- I apologize.  We've didn't have the security code initially,
17   and -- and there he is.
18        THE COURT:  Okay.  So I have Mr. Norman and Ms.
19   Edling on behalf of PHH and HSBC and NewRez?
20        MR. NORMAN:  Good afternoon.  Robert Norman.  Yes,
21   Your Honor, I apologize.  Late dialing in with the security
22   code issue.
23        THE COURT:  Okay.  And do I have Mr. Joseph McIntosh
24   for QLS?  Okay.  Mr. Joseph McIntosh, you on the phone?  Mr.
25   John McIntosh, you on the phone?  Okay.  Well, I guess they
```



1 won't be joining us today.

2 So I have reviewed the parties' submissions. I know 3 there was a motion to strike. I think after you -- after we 4 have the argument, we can address it if it has any continuing 5 relevance, but I will tell you I did review all of the 6 pleadings, and I am ready to hear any additional argument and 7 then ready to rule.

8 MS. EDLING: Your Honor, thank you. This is Emily 9 Edling for the defendants. I think the briefing covers it. If 10 the Court has any questions, I would love to address them, but 11 you know, I think one of the things that I wanted to emphasize 12 in the reply is there's been some suggestion basically that 13 we're just trying to be difficult in this case, and I want to 14 make clear that that is -- that's not the case. We have some 15 serious concerns about whether this order is going to be 16 considered a final order by the Ninth Circuit court, and as 17 everyone knows that, you know, if we get that decision wrong, 18 it's very prejudicial and could mean that we can't appeal an 19 order later. And I think because of that, we've got the 20 additional jurisdiction concerns that also kind of weigh in 21 favor of our prejudice analysis. Even if this Court does have 22 jurisdiction at this point, there's a question about it. And 23 we've got those other points on prejudice and the fact that we 24 have a property that could potentially get turned over to a 25 third party who -- and then lose our appeal, portions of our

appeal, because an appellate court won't have control over the third party.

THE COURT: All right. Ms. Henry or Mr. Anderson, would you like to add anything at all to the pleadings?

MS. HENRY: Your Honor, we are comfortable resting on the briefing, and we only want to reiterate that we brought that motion to strike because we thought that 20 pages of the reply was excessive, and we just want to preserve that should there be a need for an appeal.

THE COURT: Sure. I understand.

MS. EDLING: And, Your Honor -- Your Honor, can I say one additional thing? On reflection on the discovery issue, we've been thinking about it and are more inclined to request that the Court just open discovery for everybody rather than take the position of no further discovery. I know we were leaning that way in the briefing, so I want to just clarify that for the Court.

THE COURT: Okay. Thank you, Ms. Edling.

All right. I'm prepared to rule. I'm going to take the stay pending appeal issue first, and then we'll address the issues for the status conference and the further proceedings, if any.

The Court and the parties are intimately familiar with the facts and current disposition of this case from my prior decision from February 8th, 2021 and the March 19th order

denying the motion for reconsideration, so I won't repeat much of the facts and analysis here.

The defendants, PHH Mortgage Corporation, HSBC Bank USA, N.A. and NewRez LLC, which I will refer to as "PHH," are seeking a stay of all proceedings in this case pending appeal and the resolution of a discovery dispute over punitive damages between PHH and Ms. Hoover. The Court will address the stay pending appeal first and then turn to the discovery and other issues related to remaining matters.

First, to the issue of whether PHH has satisfied its burden of proof to obtain a stay of proceedings pending its appeal of the Court's February 8th, 2021 decision. Federal Rule of Bankruptcy Procedure 8007 governs granting stays pending appeal for adversary proceedings and contested matters.

"A court's determination on a motion for stay pending appeal is an exercise of judicial discretion dependent on the circumstances of a particular case," Nken v. Holder, 556 U.S. 418, 433 (2009).

To determine whether a stay is appropriate, courts balance four factors: First, whether the stay applicant has made a strong showing that the appeal is likely to succeed on the merits; second, whether the applicant will be irreparably harmed absent a stay; third, whether issuance of a stay will substantially injure the other parties interested in the proceeding; and fourth, where the public interest lies. That

also is the standard as set forth in Nken, 556 U.S. at 434.

The first two factors are the most critical. If an applicant satisfies the first two factors, the inquiry then calls for assessing the harm to the opposing party and weighing the public interest. Again, that's a quote from Nken, 556 U.S. at 435.

The party moving for the stay has the burden on each of these four factors and must convince the court the balance of the four factors weighs in favor of issuing a stay, Leiva-Perez v. Holder, 640 F.3d 962, 966 (9th Cir. 2011).

Here, PHH fails to satisfy its burden on all four factors.

On the first factor, the moving party must make a strong showing that it would succeed on the merits of appeal. Lair v. Bullock, 697 F.3d 1200, 1204 (9th Cir. 2012).

To do so, the court must find there is a substantial case for relief on the merits and that the showing of success is more than a "mere possibility of relief." That's a citation to Bullock at 1204 and also Leiva-Perez at 964 through 968.

Here, PHH has not met its burden of establishing that there is a substantial case for relief on the merits on any of its argument. In this Court's decision and order denying PHH's motion for reconsideration, the Court found that the sale violated the stay and was void. PHH willfully violated the automatic stay, and PHH was not entitled to annulment of the

stay. In doing so, the Court enunciated detailed facts and applicable law to support its decision and concluded that it applied well-established legal standards correctly to the facts. The decision and reconsideration order set forth in detail the legal and factual support for the ruling, and I will not repeat them here. However, because PHH raised additional arguments in its reply not raised in the motion for reconsideration regarding the spendthrift clause enforcement, I will briefly address that here.

Under Washington law, spendthrift trusts are unenforceable when the trust assets are ready for distribution, <u>Knettle v. Knettle</u>, 197 Wash. 225, 227-228 (1938).

PHH now tries to sidestep this clear legal principle by arguing that Ms. Hoover's co-trustee's purported requirement to agree to the transfer of the Bonney Lake property somehow is an exception to that general rule. However, this argument ignores the Suleiman Trust's clear mandatory transfer language where the only conditions to transfer actually occurred and vested, namely Ali Suleiman's death and Ms. Hoover's survival of him. By the Suleiman Trust's language and Washington law, the Bonney Lake property is ready for distribution because no other conditions must be met as a condition for the property to be transferred to Ms. Hoover. In other words, the co-trustee doesn't have the option to veto the transfer where the trustor has given clear instructions and shown his intent for immediate



1  distribution upon his death.

2          In sum, PHH has not established that it is likely to
3  succeed on the merits of its appeal.

4          Turning to the second factor, which requires PHH to
5  show irreparable harm, the mere possibility or existence of
6  irreparable harm does not entitle a party to a stay pending
7  appeal, Nken, 556 U.S. at 434, Sampson v. Murray, 415 U.S. 61,
8  90 (1974).

9          Mere injuries, however substantial in terms of money,
10 time, and injury necessarily expended in the absence of a stay,
11 are not enough.  Here, PHH alleges irreparable harm from costs
12 to unwind and avoid nonjudicial foreclosure sale litigation
13 costs and the loss of a potential business opportunity for
14 another defendant who is not a party to this appeal.  Also, PHH
15 asserts a mootness argument in its supplemental brief and
16 reply.

17         None of PHH's initial three arguments constitute
18 irreparable harm.  First, the decision held the nonjudicial
19 foreclosure sale void and ordered the reinstatement of the
20 Bonney Lake property title to the Suleiman Trust.  As such, the
21 sale must be unwound regardless of cost.  Further, the case law
22 makes it clear that litigation costs generally do not qualify
23 as irreparable harm, In re Marino, 949 F.3d 483, 488 (9th Cir.
24 2020).  Last, the other defendant's lost potential business
25 opportunity bears no weight on this analysis because the Court

must analyze PHH's potential to suffer irreparable harm, not another defendant's potential harm.

Also, PHH's mootness argument fails to show irreparable harm. The cases PHH cites in its supplemental briefing and reply are inapplicable here. The first two cases address statutory mootness under 11 U.S.C. Section 363(m), namely the Albert case and the Onouli-Kona Land Company case. There was no 363 sale here, so these cases on statutory mootness principles do not apply.

The next five cases PHH cites address equitable mootness, are unpersuasive, as well. The In re Yansui case, the Owen case, the In re Income Property Builders, Inc. case, the In re Ivy Fund, LLC case, Save Al-Huda School Foundation and Islamic Society of San Francisco.

An appeal is rendered equitably moot when events occur that prevent an appellate court from granting effective relief, Algeran, Inc. v. Advance Ross Corp., 759 F.2d 1421, 1423 (9th Cir. 1985).

An appeal is equitably moot if the case presents transactions that are so complex or difficult to unwind that debtors, creditors, and third parties are entitled to rely on the final bankruptcy court order, In re Mortgages Ltd., 771 F.3d 1211, 1215 (9th Cir. 2014), quoting In re Thorpe Insulation Company, 677 F.3d 869, 880 (9th Cir. 2012).

Here, PHH is a secured lender that will receive the

relief it is entitled to regardless of the appeal's outcome. PHH retains its lien and will be paid on the secured amount either by periodic payments on the mortgage through a Chapter 13 plan or a sale. Should PHH prevail on appeal, the court registry holds the voided nonjudicial foreclosure sale surplus proceeds, and Ms. Hoover has been paying her monthly mortgage payment obligation into her attorney's trust account pending the outcome of this appeal. Thus, should PHH prevail on appeal, an appellate court would be able to provide effective relief.

Finally, PHH's reference to constitutional mootness in a footnote citation has no applicability here. Constitutional mootness requires the impossibility of court granting relief for lack of a live case and controversy.

For the reasons stated above on equitable mootness, PHH's constitutional mootness argument fails since PHH will be afforded the relief it is entitled to. And although PHH fails to satisfy its burden of proof on the first two factors, which could end the analysis, for good measure, this Court will address the remaining two factors.

Ms. Hoover would be substantially injured if the Court issued a stay of execution of its order. From Ms. Hoover's previous filings and recently filed responding declaration, Ms. Hoover would be subject to substantial injuries including: continued uncertainty that prevents her

from enjoying her home as an owner because a third party currently owns the property despite this Court ordering the defendants to cooperate and unwinding the nonjudicial foreclosure sale; the inability to use Bonney Lake property's equity to access credit; being unable to refinance her home; the inability to make repairs and other property improvements with the certainty she will benefit from this investment; the inability to restore utilities in her name and the stress of a potential utility bill looming over her family's finances; continuing emotional distress of not knowing what will happen to her family home; and feeling like her family doesn't have options to move elsewhere, if the need arises; and the continuing accruing attorneys' fees of prosecuting this proceeding and defending this matter on appeal.

Lastly, the Court finds that the public interest lies in denying a stay pending appeal in this case. Here, given that the automatic stay is a fundamental principle of bankruptcy law, and the Court having found that the sale violated the stay, and PHH willfully violated the stay, granting a stay pending appeal would intervene in the court-ordered remedial procedures to return Ms. Hoover to her pre-bankruptcy status quo ante. Thus, the public interest lies in not granting a stay pending appeal.

For the foregoing reasons, and because PHH has failed to meet its burden for a stay pending appeal, its motion is

13

denied. However, despite PHH not being entitled to a stay, the Court now turns to the PHH's finality arguments because they affect this Court's jurisdiction over future proceedings in this adversary proceeding.

There are three cases the Court will briefly address on finality in this context: <u>Bullard</u> and <u>Ritzen</u> from the U.S. Supreme Court and the Ninth Circuit's <u>In re Perl</u>.

First, <u>Bullard</u>, 575 U.S. 496 (2015), which states that Congress has long provided that orders in a bankruptcy case may be immediately appealed if they finally dispose of discrete disputes within larger cases.

Second, In <u>Ritzen</u>, the U.S. Supreme Court stated that the precise issue the court decided is does a creditor's motion for relief from automatic stay initiate a distinct proceeding terminating a final, appealable order when the bankruptcy court rules dispositively on the motion. That's <u>Ritzen</u> setting forth the issue at 140 S. Ct. at 586.

The Supreme Court answered this question "yes." It held that the adjudication of a motion for relief from the automatic stay forms a discrete procedural unit within the abrasive bankruptcy case. That unit yields a final appealable order when the bankruptcy court unreservedly grants or denies relief.

Lastly, <u>In re Perl</u> involved a bifurcated dispute between two parties that first addressed liability for willful

violation of the automatic stay under Section 11 U.S.C. 362(k)(1), similar to the case at hand. There, the bankruptcy court's order determined the discrete issue of whether there was a willful violation of the stay, which was the only issue litigated in the bankruptcy proceeding and therefore before the BAP. As a practical matter, resolution of that issue resolved the entire case and thereby qualified as a final decision to finality in the bankruptcy context. There was no question that the discrete issue addressed by the bankruptcy court violation of the automatic stay had been definitively and finally resolved. Resolution of that issue was as final as it ever would be in that case. That's a quotation from In re Perl, 811 F.3d 1120, 1127 (9th Cir. 2016).

Determining the finality of an order in bankruptcy requires a complex analysis, particularly in a case like we have here with multiple parties and somewhat different postures on the various claims in the proceeding. Nonetheless, under the U.S. Supreme Court and this Circuit's precedents, the Court concludes that its order is final as to the determination that the stay was violated and the sale is void, the determination that PHH willfully violated the stay and caused damage to the debtor in an undetermined amount under 362(k), and the denial of the motion to annul the automatic stay.

PHH has filed a notice of appeal of these three issues. Thus, PHH's notice of appeal likely divests this Court

1  of jurisdiction pending appeal of all proceedings pertaining to
2  these issues.  This necessarily includes the Court's ability to
3  continue adjudicating damages against PHH for the willful
4  violation of the stay under 362(k) and whether IH6 willfully
5  violated the stay under 362(k) because although IH6 is not a
6  party to the appeal, there cannot be a willful violation of the
7  stay without a stay violation in the first instance.

8        What the appeal does not stay, however, is execution
9  and compliance with the Court's order.  <u>See 10 Collier on
10 Bankruptcy</u> 8007.02 (16th ed. 2020), stating if the judgement
11 awards money or property, it may be executed upon unless
12 stayed.

13       Specifically, this Court ordered that the defendants
14 shall cooperate with Ms. Hoover and her counsel to immediately
15 take all steps necessary to undo the foreclosure sale of the
16 Bonney Lake Property.  Because the Court has denied PHH's
17 motion to stay such proceeding, it intends to enforce this part
18 of its earlier entered decision.

19       Accordingly, discovery on the damages issue against
20 PHH for willful violation of the automatic stay under 362(k) is
21 suspended in light of the Court's ruling on finality.  Further
22 suspended is adjudication of whether IH6 willfully violated the
23 automatic stay.

24       The Court will hold a status conference to ensure
25 that the order concerning undoing the foreclosure sale and

1  restoring the property to its position prior to the void sale -
2  - in other words, titled back to the Suleiman Trust -- shall
3  occur within 14 days of this hearing, and the Court will set a
4  status conference and enter an order on today's ruling.  And
5  the dates I have available for a status conference are
6  preferably on the 20th at 2:30 p.m. and the 19th at 11 or 2
7  p.m. or possibly on the 23rd.
8          All right.  So any questions?
9          MR. NORMAN:  Your Honor, Robert Norman.  Those dates
10 are fine with me, the 19th, 20th, or the 21st.
11         THE COURT:  All right.  Ms. Henry?
12         MS. HENRY:  The 20th -- the 19th is not good.  The
13 20th is fine.  And what did you say, the 21st or the 26th?
14         THE COURT:  No, the 23rd.  If everyone's available on
15 the 20th, that would be my preference, at 2:30.
16         MS. HENRY:  That would be fine.
17         THE COURT:  All right.  Do the parties want to talk
18 any further about where you're at on transferring title back to
19 the trust?
20         I just want to clarify, Ms. Henry, that I think the
21 obligation is to get it back to the trust, which is where it
22 was prior to the void sale.
23         MS. HENRY:  Okay.  I'm fine with that ruling, Your
24 Honor.
25         THE COURT:  Okay.

1     MS. HENRY:  I will say our only issue is -- well, I
2 guess it'll be talk about at the status conference, right?
3     THE COURT:  Yeah.
4     MS. HENRY:  Okay.
5     THE COURT:  All right, thank you.
6     MR. NORMAN:  Thank you, Your Honor.
7     MS. EDLING:  Thank you, Your Honor.
8     (Proceedings concluded at 1:28 p.m.)
9                    * * * * *

22          **C E R T I F I C A T I O N**

24     I, Alicia Jarrett, court-approved transcriber, hereby
25 certify that the foregoing is a correct transcript from the

ACCESS TRANSCRIPTS, LLC          1-855-USE-ACCESS (873-2223)

1 official electronic sound recording of the proceedings in the
2 above-entitled matter.
3
4
5
6 _____
7 ALICIA JARRETT, AAERT NO. 428     DATE:  April 5, 2021
8 ACCESS TRANSCRIPTS, LLC